63 F.3d 763
 68 Fair Empl.Prac.Cas. (BNA) 1441
 Vickie THOMAS, Appellant,
v.
CITY OF OMAHA, DOUGLAS COUNTY, NEBRASKA, a municipal
corporation; Ola Anderson, Personnel Director of the City
of Omaha; Horton Dahlquist, Chief of Fire Division; Alfred
Pattavina, Public Safety Director, Appellees.
 No. 94-3942.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1995.
Decided Aug. 23, 1995.
 
 Julie A. Frank, argued, Omaha, NE (Judy Hoffman on brief), for appellant.
 Wendy E. Hahn, Asst. City Atty., argued, Omaha, NE (James E. Fellows, Deputy City Atty., on brief), for appellee.
 Before McMILLIAN, BEAM and HANSEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Vickie Thomas brought this sex discrimination action in the United States District Court[1] for the District of Nebraska against the City of Omaha, Ola Anderson, Horton Dahlquist, and Alfred Pattavina (defendants) seeking damages pursuant to 42 U.S.C. Sec. 1983, Title VII, and the Nebraska Fair Employment Practices Act. Plaintiff now appeals from a final judgment entered for defendants after the jury returned a verdict in favor of defendants on her Sec. 1983 claim and the district court made findings in favor of defendants on her Title VII and state law claims. Thomas v. City of Omaha, No. CV 90-67 (D.Neb. Sept. 29, 1994) (judgment). For reversal, plaintiff argues that the district court erred in denying her motion for judgment as a matter of law and abused its discretion in denying her motion for a new trial. Upon careful review of the arguments presented on appeal and the record before us, we affirm the judgment of the district court.
 
 
 2
 Thomas sued the City of Omaha (the City) and individuals involved in the administration of the Omaha Fire Department (the Department) claiming that they violated her rights when they failed to offer her a position as a firefighter. The facts, briefly summarized, are as follows. Plaintiff applied for a position as a firefighter in 1986. As a result of her application, she was permitted to participate in the Department's three-step hiring selection process. The selection process involves, first, a written test and, second, a physical agility test. Based upon the scores from those two tests, applicants are ranked on an "eligibility list." When openings become available, names are taken from the eligibility list to advance to the third and final stage, which is called a "structured interview." Generally, the top names advance, except that members of protected groups (i.e., women and minorities) may advance despite their relatively lower ranking by virtue of the City's affirmative action plan. Twice as many applicants as there are openings advance to the structured interview stage and, at that point, no priority is assigned based upon rank within the eligibility list. The structured interviews are conducted by a panel of three firefighters having the rank of captain or higher. The interviewees are asked a uniform set of questions previously developed by a team of experts. Each panel member separately scores each interviewee. The scores are then tabulated and placed on a "summary sheet." The Chief of the Department makes the ultimate hiring decisions.
 
 
 3
 In 1987, the Department needed to hire thirty-eight firefighter recruits. Seventy-six names were selected from an eligibility list that had been created in 1986. As a result of the City's affirmative action plan, plaintiff was among the seventy-six individuals to advance from the eligibility list to the structured interviews even though she ranked 396 out of the 807 on the eligibility list. Plaintiff was the second highest ranking woman of the ten women to advance to the structured interviews. After the interview, she ranked sixth among the ten women and thirty-fifth among the seventy-six total candidates. All five of the women ahead of her were hired, but she was not. Another woman, Debbie Robinson, who was the highest ranking woman going into the interviews, also was not hired. She ranked below plaintiff after the interviews. Robinson complained, however, and was later offered a position. Plaintiff did not complain.
 
 
 4
 In 1988, the Department needed to hire twenty-eight more recruits. Fifty-six individuals were selected from the 1986 eligibility list to advance to the structured interviews. Five women advanced to the structured interviews, including plaintiff, who ranked the highest among the women. After the structured interviews, all of the women, including plaintiff, ranked relatively low among the fifty-six total candidates. None of the five women candidates were hired in 1988.
 
 
 5
 Plaintiff filed this action alleging sex discrimination in both the 1987 and the 1988 hiring processes. Specifically, plaintiff alleged that discrimination occurred during, and as a result of, the structured interview process, which involved subjective criteria. Plaintiff's Sec. 1983 equal protection claim was tried to a jury. The jury returned a verdict in favor of defendants, finding that defendants had not unlawfully discriminated against plaintiff on the basis of her gender. The district court then entered judgment in favor of defendants on plaintiff's Title VII claim and parallel state law discrimination claim.[2] Thomas v. City of Omaha, No. CV 90-67 (D.Neb. Sept. 29, 1994) (memorandum and order). The district court noted that the jury did not find that plaintiff's gender was a determining factor in defendants' decision to deny her an offer; nor did the jury find that she was treated differently from her male counterparts in the structured interview process. Consistent with the jury's findings, the district court held that plaintiff failed to show either that she had been treated differently in the structured interviews because of her gender or that an illegitimate criterion was a motivating factor behind the City's use of the structured interviews. The district court concluded that plaintiff had failed to meet her burden of proving intentional discrimination either under a disparate treatment theory of liability or under a disparate impact theory of liability,[3] and accordingly entered judgment for defendants on all of plaintiff's claims. Id. at 5, 6. Plaintiff filed a renewed motion for judgment as a matter of law or for a new trial. The district court denied both motions. Id. (Oct. 31, 1994) (order). Plaintiff appealed.
 
 
 6
 Plaintiff argues that the district court's findings, with respect to her Title VII disparate impact theory of liability, were clearly erroneous. Upon careful review, we hold that, consistent with the jury's finding that plaintiff was not treated differently from men in the structured interviews, it was not clearly erroneous for the district court to infer that the structured interviews did not cause the exclusion of women because of their gender. In other words, the district court was warranted in concluding that the evidence presented at trial was not "of a kind and degree sufficient to show that the practice in question ha[d] caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994, 108 S.Ct. 2777, 2789, 101 L.Ed.2d 827 (1988) (Watson ). Therefore, contrary to plaintiff's argument on appeal, she failed to establish a prima facie case under Watson. Id. ("the plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force.... Once the employment practice at issue has been identified, causation must be proved").[4]
 
 
 7
 Plaintiff separately argues that the district court erred in denying her motion for judgment as a matter of law, or for a new trial, on her disparate treatment theory of liability asserted under both Title VII and Sec. 1983. We note that plaintiff's Sec. 1983 equal protection claim was tried to the jury, and that her bench-tried Title VII disparate treatment claim was virtually identical to her Sec. 1983 claim. The jury ultimately found, as a matter of fact, that gender was not a motivating factor in defendants' decision to deny plaintiff a job offer. The district court's finding on this issue agreed with the jury's. On appeal, "[w]e have no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines, according to proper procedures, that the employer has unlawfully discriminated." St. Mary's Honor Ctr. v. Hicks, --- U.S. ----, ----, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993) (emphasis in text). Thus, we hold that the district court did not err in denying plaintiff's motion for judgment as a matter of law on her disparate treatment theory of liability. We further hold that the district court did not abuse its discretion in denying plaintiff's motion for a new trial because the weight of the evidence was consistent with both the jury's verdict and the district court's findings.
 
 
 8
 Upon careful review of the parties' arguments and the record in this case, we hold that the evidence suggesting that defendants intentionally discriminated against plaintiff on the basis of her gender is not so overwhelming that it requires judgment in her favor as a matter of law or a new trial. Accordingly, the judgment is affirmed. See 8th Cir.R. 47B.
 
 
 
 [1]
 The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska
 
 
 [2]
 Plaintiff was not entitled to a jury trial on her Title VII claims. The 1991 Civil Rights Act did not apply because the events in question occurred in 1987 and 1988. The Sec. 1983 claim and Title VII disparate treatment claim were considered by the district court to be virtually identical
 
 
 [3]
 The district court also held that "the plaintiff's Title VII claim does not warrant an application of the 'mixed-motive' analysis of Price Waterhouse v. Hopkins, [490 U.S. 228], 109 S.Ct. 1775 [104 L.Ed.2d 268] (1989)." Thomas v. City of Omaha, No. CV 90-67, 1994 WL 854024, slip op. at 3 (D.Neb. Sept. 29, 1994) (memorandum and order)
 
 
 [4]
 We also note that defendants introduced evidence at trial showing that the questions used in the structured interviews were job-related, selected by experts, valid under EEOC guidelines, and not based upon an expectation of expertise in any particular area