_____

No. 96-1521WM
_____

Scott L. Silver, on behalf of     *
himself and all others          *
similarly situated,             *
                             *
           Appellant,       *    Appeal from the United States
                             *    District Court for the Western
   v.                       *    District of Missouri.
                             *
H&R Block, Inc.; Thomas M.      *
Block; Ozzie Wenich,          *
                             *
           Appellees.       *
_____

Submitted:  December 12, 1996

Filed:  January 23, 1997
_____

Before FAGG, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
_____

FAGG, Circuit Judge.

      Scott L. Silver, an investor in H&R Block, Inc.'s common stock, brought this action against H&R Block, its president and chief executive officer, Thomas M. Block, and its controller and vice-president of finance, Ozzie Wenich, asserting federal and state securities fraud claims.  See 15 U.S.C. § 78j(b) (1994); 17 C.F.R. § 240.10b-5 (1996).  Silver contends H&R Block made materially false and misleading public statements reported in news articles on October 27 and 28, 1994, the first and second days after the Internal Revenue Service terminated its direct deposit indicator (DDI), on which H&R Block's refund anticipation loan (RAL) program relied.  In Silver's view, H&R Block's October statements were too optimistic about the effect of the IRS change, and thus artificially inflated the price of H&R Block's stock.  Silver contends Block disclosed the true adverse impact of the IRS

change on November 22, causing the stock price to fall 17%. Eight days later, on November 30, Silver filed this action. In his complaint, Silver selectively quoted the October statements without attaching the full text.

H&R Block filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and submitted the entire text of the October statements with the motion. The parties then filed a joint motion to stay all discovery pending a decision on the motion to dismiss. Later, the court advised the parties that because it would consider the entire text of the statements, which were technically not presented in the complaint, the court would convert H&R Block's motion to one for summary judgment. The parties filed supplemental briefs and Silver filed a Rule 56(f) affidavit stating discovery was necessary. Without permitting discovery, the district court granted summary judgment to H&R Block, holding the October statements were not misleading as a matter of law. Silver appeals, and we affirm.

To prevail on his securities fraud claims, Silver must show, among other things, that H&R Block made materially misleading statements or omissions. See Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1533-34 (8th Cir. 1996); Fecht v. Price Co., 70 F.3d 1078, 1080 (9th Cir. 1995), cert. denied, 116 S. Ct. 1422 (1996). Whether a public statement is misleading is a mixed question normally for the trier of fact. See Fecht, 70 F.3d at 1081. The issue is appropriately decided as a matter of law, however, when reasonable minds could not differ. See id. at 1081, 1082. In other words, if no reasonable investor could conclude public statements, taken together and in context, were misleading, then the issue is appropriately resolved as a matter of law. See In re Syntex Corp. Secs. Litig., 95 F.3d 922, 926 (9th Cir. 1996); I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., 936 F.2d 759, 761 (2d Cir. 1991).

Silver contends the statements were misleading, but does not dispute their content.  The first statement ran in the <u>Dow Jones News Wire</u> on October 27:

> H&R Block said today that it is reviewing its approach to Refund Anticipation Loans (RAL) in light of the Internal Revenue Service's announcement that it will eliminate the procedure that it uses to notify electronic filers of expected refunds. The Company plans to explore with its lending group the possibility of developing a new refund-related product for the 1995 tax season that will offer customers speed, affordability and convenience and at the same time control the risk to lenders. . . .
>
> As a result of concerns relating to fraudulent tax refund claims by taxpayers, the IRS reported yesterday that, beginning with the upcoming 1995 tax season, it will eliminate the Direct Deposit Indicator (DDI). . . . The DDI was a key element of the RAL program because it helped control the risk of loan losses and thus encouraged participating financial institutions to make RALs under relatively favorable terms to taxpayers.
>
> The consequences of the IRS decision are potentially significant to H&R Block, Inc.  The Company believes that financial institutions providing RALs may institute certain measures to offset the anticipated increased credit risk that would result from the removal of the DDI.  These measures may include an increase in cost to the consumer or the adoption of more stringent criteria for use in the loan approval process.
>
> H&R Block company-owned and franchised offices electronically filed about 7.5 million or 56% of the total tax returns filed electronically in the U.S. during the 1994 tax season. Approximately one-third of Block's electronically filed returns were for taxpayers who did not use the Company's tax preparation service.  Electronic filing fee volume in fiscal 1994 was $202,266,000.  In addition, the RAL banks paid H&R Block Tax Services and its franchises a $7 license fee for each RAL made to an H&R Block electronic filing customer. . . .
>
> . . . .

The next day, the following article appeared in the <u>Wall Street Journal</u>:

> New Treasury Department procedures designed to curb fraud

> related to electronic filing of tax returns are being criticized by H&R Block, Inc., which says the change will hurt its loan business. Block . . . said the consequences to it are "potentially significant."
>
> . . . .
>
> Ozzie Wenich, H&R Block's vice president of finance, said in an interview that the change means the government will no longer tell lenders whether there is a government lien against a taxpayer who is due a refund. As a result, lenders basing loans on expected refunds will be taking on more risk. . . . He said that while the change could hurt Block's business in refund-anticipation loans, it could also gain some business because the changes could put smaller competitors out of business.
>
> Mr. Wenich estimated that about 75% of the 13 million taxpayers who filed electronically in the 1994 tax season received a refund-anticipation loan. He said Block filed about 7.5 million of the total electronic returns.
>
> Block . . . said it plans to explore with its lending group the possibility of coming up with a new refund-related product.
>
> . . . .

Silver contends these two October statements were misleading because they omitted predictions contained in H&R Block's November 22 press release about its projected earnings for the 1995 tax season, ending the following April. In its discussion of the IRS's decision to eliminate DDI, the November 22 release stated it was likely that revenues and earnings of H&R Block Tax Services would decline in fiscal 1995, and it was possible that Block Financial Corporation would report lower earnings or a loss.

The gist of the October statements is that the IRS's termination of DDI is bad news for H&R Block. The October 27 article explains why DDI was a key element of the RAL program and the financial importance of the RAL program to H&R Block and its subsidiary, Block Financial Corporation. The October 28 article states the IRS change "will hurt [Block's] loan business" and the

-4-

consequences are potentially significant to the company.  As a whole, the October statements cautioned investors rather than encouraged them, and would not mislead any reasonable investor.  <u>See</u> <u>In re Syntex</u>, 95 F.3d at 928.  Rather than contradicting the October statements, the November statement merely quantifies the same message.  It would be improper to infer that the October statements warning investors were misleading simply from the lack of a specific financial projection.  Likewise, we cannot infer that the statements were false or misleading from the movement of the stock price alone, as Silver suggests, given the abundance of market variables.

Silver contends the district court committed error in granting summary judgment without allowing discovery or addressing his Rule 56(f) affidavit.  We need not reach the discovery issue because the district court could have granted H&R Block's motion to dismiss rather than convert the motion to one for summary judgment.  It is true that when a motion to dismiss presents matters outside the pleadings, the motion is generally treated as one for summary judgment.  <u>See</u> Fed. R. Civ. P. 12(b).  Nevertheless, in this case, the district court could have properly considered the complete statements in granting the motion to dismiss.  <u>See</u> <u>In re Syntex</u>, 95 F.3d at 926; <u>I. Meyer Pincus</u>, 936 F.2d at 762.  Silver's entire lawsuit is based only on the statements, and he does not dispute their content.  <u>See</u> <u>I. Meyer Pincus</u>, 936 F.2d at 762.  Silver cannot defeat a motion to dismiss by choosing not to attach the full statements to the complaint.  <u>See</u> <u>id.</u>  In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences.  <u>See</u> <u>In re Syntex</u>, 95 F.3d at 926.  Applying these principles, we conclude reasonable minds could only agree the challenged statements were not misleading, so Rule 12(b)(6) dismissal is proper.  <u>See</u> <u>id.</u> at 928.

We thus affirm the district court on this alternative ground.

A true copy.

      Attest:

             CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.