**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-3081EA

William H. Johnson,         *
                                     *
           Appellant,      *
                                       *
     v.                        *
                                       *
City of West Memphis; Al Boals,  *
in His Official and Individual    *
Capacity; Joe Brasfield, in      *
His Official and Individual      *   Appeal from the United States
Capacity; Thomas Burroughs, in   *   District Court for the Eastern
His Official and Individual      *   District of Arkansas.
Capacity; Al Felton; Roberta     *
Jackson, in Her Official and     *
Individual Capacity; Bill       *
Pollard, in His Official and     *
Individual Capacity; Dan Scott,  *
in His Official and Individual    *
Capacity,                        *
                                       *
           Appellees.      *

_____

Submitted:  March 10, 1997

Filed:  May 14, 1997

_____

Before FAGG, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

FAGG, Circuit Judge.

In January 1995, newly elected mayor Al Boals fired William H. Johnson from his job as the general manager of the utility commission in West Memphis, Arkansas.  Despite Johnson's repeated requests, Mayor Boals refused to hold a termination hearing or to offer any reasons for his decision.  Johnson asked the city council to intervene, but his request was denied.  <u>See</u> Ark. Code Ann. § 14-

42-110 (Michie 1987) (unless vetoed by two-thirds of city council, city mayor can appoint and remove all department heads). Believing he was entitled to a hearing, and that he was fired because he declined to support Mayor Boals's election campaign, Johnson filed this 42 U.S.C. § 1983 lawsuit against Mayor Boals, the members of the city council, and the City of West Memphis (collectively the City). The district court granted the City's motion for summary judgment, and Johnson appeals. We affirm.

The Due Process Clause requires the government to provide an employee with procedural due process if the employee stands to lose a constitutionally protected property or liberty interest. See Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972). For a property interest to exist, the public employee must have a legitimate claim of entitlement to continued employment. See Skeets v. Johnson, 816 F.2d 1213, 1215 (8th Cir. 1987) (en banc). An employee's liberty interests are implicated when, in connection with the employee's discharge, a government official makes accusations that seriously damage the employee's standing in the community or foreclose other employment opportunities. See Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993).

Johnson lacked a property interest because he was not entitled to continued employment as the utility commission's general manager. Under Arkansas law, Johnson was an at-will employee who could be terminated at any time without cause. See Skeets, 816 F.2d at 1215. The Arkansas Supreme Court recognizes certain exceptions to its employment-at-will doctrine, see Mertyris v. P.A.M. Transport, Inc., 832 S.W.2d 823, 825 (Ark. 1992), but Johnson does not fall within any of them. Johnson had no written employment contract covering a definite term, and although the city's personnel manual states employees will not be terminated "without being offered a pre[]termination hearing," the manual does not expressly provide that employees will only be dismissed for

-2-

cause.  See id.  Contrary to Johnson's view, the longstanding custom of providing all city employees with a due process hearing before they were terminated does not affect our analysis.  See Packett v. Stenberg, 969 F.2d 721, 724-25 (8th Cir. 1992) (newly elected officials may change an earlier administration's employment practices).  Besides, like the terms of the personnel manual itself, the past mayor's willingness to grant a hearing merely creates an expectancy of review, and not a legitimate claim to continued employment with the City of West Memphis.  See Stow v. Cochran, 819 F.2d 864, 866-67 (8th Cir. 1987).

Likewise, Johnson lost no liberty interest during the city council's public debate on whether the council should override Mayor Boals's termination decision.  Rather than making accusations that would stigmatize Johnson's protected liberty interest, see Shands, 993 F.2d at 1347-48, councilwoman Roberta Jackson simply expressed her view that it was inappropriate for the utility commission to do construction work on private property, and stated some anonymous commission employees had complained to her about being "harassed" at work.

Having rejected Johnson's due process claim, we turn to his contention that he was fired for exercising his First Amendment rights.  Johnson correctly points out that a public employee may not be discharged for political reasons unless the employee's political views are an appropriate qualification for the job in question.  See Branti v. Finkel, 445 U.S. 507, 518 (1980); Billingsley v. St. Louis County, 70 F.3d 61, 63 n.1 (8th Cir. 1995); O'Connor v. Steeves, 994 F.2d 905, 909 (1st Cir. 1993). Assuming Mayor Boals based his termination decision on Johnson's refusal to support his candidacy, we conclude personal loyalty to the mayor is an appropriate requirement for the general manager's position.  The general manager reports directly to the mayor and his duties include public relations and responsibility for the

utility commission's long-range planning. We believe Johnson's planning responsibilities, which encompass areas of city decisionmaking that could be influenced by his partisan viewpoints, put a premium on his allegiance to the mayor. See Branti, 445 U.S. at 517-19; O'Connor, 994 F.2d at 910-11; Bauer v. Bosley, 802 F.2d 1058, 1061 (8th Cir. 1986). Indeed, Johnson admits that he did not see eye-to-eye with Mayor Boals's view that it would not be in the city's best interest to convert the utility commission into an independent governmental body. Under the utility commission's current structure, the city council has the final say on setting customer rates, and the city receives substantial revenue from the commission's operations. Not only is Johnson at odds with Mayor Boals about the impact a conversion would have on the city, he is also in a position to lobby his agenda with the city council and the public as well in his role as the utility commission's highly visible spokesman. See Branti, 445 U.S. at 518. Also, we cannot overlook Mayor Boals's concern that local elections often turn on a utility commission's ability to deliver low-cost, high-quality municipal services. See O'Connor, 994 F.2d at 910-11. The district court thus correctly decided that Mayor Boals was free to replace Johnson with someone he believed would willingly carry out his plans for the utility commission.

Because Johnson failed to establish any constitutional violations arising from his discharge, we affirm the judgment of the district court. We also grant the City's unopposed motion to add the transcript of the relevant city council meeting to the record.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.


-4-