Teresa L. **MERCER**, Plaintiff,

v.

**CITY OF CEDAR RAPIDS, IOWA, and William J. Byrne, Defendants.**

No. C 98–0143–MWB.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Dec. 6, 1999.

Mark J. Seidl, Seidl & Chicchelly, Marion, IA, for plaintiff Teresa Mercer.

Mohammad H. Sheronick, City Attorney, Cedar Rapids, IA, for defendants City of Cedar Rapids and William J. Byrne.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' RENEWED MOTION TO DISMISS

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ........................................................ 1057
 A. *Procedural Background* ........................................... 1057
 B. *Mercer's Claims* ................................................ 1058

II. *LEGAL ANALYSIS* ..................................................... 1058
 A. *Standards for a Rule 12(b)(6) motion* ........................... 1058
 B. *Defendants' Grounds For Dismissal* .............................. 1060
 1. *Failure to exhaust the Title VII claim* ..................... 1060
 2. *Inadequacy of the "equal protection" claim* ................. 1061
 3. *Insufficiency of the "due process" claim* ................... 1063
 4. *Insufficiency of allegations of municipal liability* ........ 1064
 5. *Byrne's qualified immunity* ................................. 1065

III. *CONCLUSION* ........................................................ 1066

Should this plaintiff's entire amended complaint be dismissed for failure to state a claim upon which relief can be granted? The defendants think so, reiterating the same grounds for dismissal they asserted with regard to the plaintiff's original complaint. The plaintiff, however, concedes nothing, and asserts instead that it is the defendants' motion that should be denied in its entirety.

### I. INTRODUCTION

#### A. Procedural Background

This matter comes before the court pursuant to defendants' April 12, 1999, renewed motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The defendants filed their original motion to dismiss on December 17, 1998, seeking dismissal in its entirety of Mercer's original Complaint, filed on December 2, 1998. However, by order dated March 29, 1999, Senior Judge Edward McManus denied the original motion to dismiss on the ground that Mercer had filed a First Amended Complaint that appeared to be an attempt to remedy matters raised in the defendants' motion to dismiss. Judge McManus therefore treated Mercer's resistance to the motion to dismiss as a motion for leave to file an amended complaint, and on that basis, granted Mercer leave to amend and denied the defendants' original motion to dismiss.

The defendants, however, were not satisfied that the First Amended Complaint rectified any of the deficiencies they perceived in the original Complaint, and therefore renewed their motion to dismiss on April 12, 1999, asserting the identical grounds for dismissal. Mercer resisted the defendants' renewed motion to dismiss on April 26, 1999, and the defendants filed a reply to that resistance on May 6, 1999.

On September 27, 1999, Senior Judge McManus recused himself from all further proceedings in this action, on the ground that defendant Byrne is now employed as a court security officer at the Federal Building in Cedar Rapids, Iowa, where

Judge McManus has his chambers. Consequently, the case was reassigned to the undersigned, whose chambers are in Sioux City, Iowa. This judge also provided the parties with the opportunity to express any concerns they might have that he should also disqualify himself from hearing this case. On November 5, 1999, the parties filed a notice that they had reached the conclusion that it is acceptable for the undersigned to continue to participate in this case.

No party has requested oral arguments on the defendants' renewed motion to dismiss. Therefore, the court considers this matter fully submitted.

### B. Mercer's Claims

Although not a marvel of lucidity, it is apparent that plaintiff Mercer's First Amended Complaint alleges constitutional violations, pursuant to 42 U.S.C. § 1983, and sexual discrimination in violation of Title VII, 42 U.S.C. § 2000e. These claims allegedly arise from her termination on March 13, 1998, from her position as a police officer with the Cedar Rapids Police Department. At the time Mercer was terminated, defendant William J. Byrne was the Chief of Police for the City of Cedar Rapids. Mercer alleges that Byrne made the decision to terminate her, and in so doing, was acting as an agent with the full authorization of the defendant City of Cedar Rapids (the City). *See* First Amended Complaint, ¶ 6.

The essence of Mercer's claims of violations of Title VII and the United States Constitution appears to be stated in the following paragraphs of Mercer's First Amended Complaint:

7. Defendants' termination of Plaintiff was based in part on consideration of Plaintiff's gender in that others who had committed the same acts as alleged to be the basis for Plaintiff's termination were not terminated or similarly disciplined.

8. Defendants were acting under color of State law when they terminated Plaintiff, which act constituted the deprivation of Plaintiff's civil rights actionable under 42 U.S.C. § 1983, in the following particulars:

a) Plaintiff's termination resulted from her involvement in a relationship with another officer when both Plaintiff and that other officer were married. Plaintiff was subjected to a trumped up internal affairs investigation involving repeated inquiries into matters of a personal nature, and was fired as a consequence of her participation in the relationship, while the other party to the relationship was not terminated. Plaintiff was thereby denied equal protection under the law in that she was discriminated against on the basis of her gender.

b) At the time of Plaintiff's termination, Defendant Byrne made statements to the media which stigmatized Plaintiff as a person incapable of performing the duties of a police officer. Plaintiff was offered no opportunity in a public hearing to rebut those stigmatizing statements, and was thus deprived of a constitutionally protected occupational liberty interest without due process of law.

9. Defendants' termination of Plaintiff was also a violation of 42 U.S.C. § 2000E–2 [sic].

First Amended Complaint, ¶¶ 7–9.

## II. LEGAL ANALYSIS

### A. Standards for a Rule 12(b)(6) motion

The issue on a motion to dismiss for failure to state a claim pursuant to FED. R.CIV.P. 12(b)(6) is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in

the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir.1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir.1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir.1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir.1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.) (same), cert. denied, —— U.S. ——, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303–04 (8th Cir.1997) (same); *WMX Techs., Inc. v. Gasconade County, MO*, 105 F.3d 1195, 1198 (8th Cir.1997) (same); *First Commercial Trust v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir.1996) (same).

The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Mor-*

*gan*, 829 F.2d at 12). Conclusory legal allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488. The defendants misconstrue this rule, asserting, without citing any authority, that the court should reject "merely conclusory or argumentative allegations." It is precisely conclusory allegations of fact, and the allegations of fact disputed by the defendant, that this court must assume are true on a motion to dismiss. *See, e.g., Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Gross*, 186 F.3d at 1090. What the court must reject are "conclusory allegations of *law* and *unwarranted* inferences." *Silver*, 105 F.3d at 397 (emphasis added).

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley*, 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.,* 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998) (same); *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997) (same); *Doe,* 107 F.3d at 1304 (same); *WMX Techs., Inc.,* 105 F.3d at 1198 (same). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995) (internal quotation marks and ellipses omitted); *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). The court therefore turns to the question of whether such an "insuperable bar" to any of Mercer's claims appears on the face of the complaint.

**B. Defendants' Grounds For Dismissal**

The defendants raise various grounds for the dismissal of all or various parts of Mercer's complaint. The defendants' sole challenge to Mercer's Title VII claim is that Mercer has failed to exhaust her administrative remedies prior to filing this federal lawsuit. The defendants challenge Mercer's constitutional claims on several grounds. First, they challenge Mercer's "equal protection" claim on the ground that this claim attempts to circumvent Title VII's exhaustion requirement by using § 1983 to assert a gender discrimination claim for which Title VII provides the exclusive remedy. The defendants seek dismissal of Mercer's "due process" claim on the ground that simple defamation is not enough to support a claim pursuant to 42 U.S.C. § 1983, and Mercer has not alleged that she could be dismissed only for cause, so that Mercer had no protectable liberty or property interest in her continued public employment. The defendants

assert that Mercer cannot assert any constitutional claim against the City, because she has failed to allege that any wrongful action was taken as the result of a policy or practice of the City. Rather, the City contends that Mercer has alleged, at best, a single incident of purportedly unconstitutional behavior. Finally, the defendants assert that Byrne is entitled to qualified immunity for performing the discretionary function of terminating Mercer, since that action did not violate Mercer's clearly established statutory or constitutional rights. Mercer disputes each of these contentions. The court will consider each of the grounds for dismissal asserted *seriatim* to see if any ground raises an "insuperable bar" to a challenged claim or claims. *See Parnes,* 122 F.3d at 546; *Frey,* 44 F.3d at 671.

**1. Failure to exhaust the Title VII claim**

In asserting that Mercer has failed to exhaust her Title VII claim, the defendants acknowledge that Mercer has pleaded that she exhausted administrative remedies and received the necessary right-to-sue letters prior to filing suit. However, because Mercer failed to attach the right-to-sue letters to either her Complaint or her First Amended Complaint, notwithstanding her assertion that she had done so in each version of the Complaint, the defendants contend that her conclusory allegation of exhaustion cannot be taken as true. Mercer subsequently attached the missing right-to-sue letters to her resistance to the renewed motion to dismiss. In response to the appearance of the right-to-sue letters, the defendants argue that Mercer did not "perfect" her complaint until the letters appeared on April 26, 1999, which was more than ninety days after she received the letters, which are dated November 23, 1998, and thus Mercer's complaint is not timely.

 The defendants' arguments for dismissal of Mercer's Title VII claim as unexhausted or untimely are without mer-

it. It is true that "an employee cannot bring a discrimination claim [under Title VII] without first exhausting his or her administrative remedies." *Briley v. Carlin,* 172 F.3d 567, 571 (8th Cir.1999); *Hanenburg v. Principal Mut. Life Ins. Co.,* 118 F.3d 570, 573 (8th Cir.1997). Furthermore, "[i]n order to exhaust administrative remedies, the claimant is required to demonstrate good faith participation in the administrative process, which includes making specific charges and providing information necessary to the investigation." *Id.* "[I]n most cases, the EEOC issues a notice, commonly called a right-to-sue letter." *Hanenburg,* 118 F.3d at 573 (citing 42 U.S.C. §§ 2000e–5(e)(1), 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Chaffin v. Rheem Mfg. Co.,* 904 F.2d 1269, 1271 (8th Cir.1990)). " '[A]ny claimant who files an administrative charge and receives a right-to-sue letter from the EEOC must file suit within ninety days after receiving that letter to preserve the cause of action.' " *Winbush v. State of Iowa by Glenwood State Hosp.,* 66 F.3d 1471, 1486 (8th Cir.1995) (quoting *Anderson v. Unisys Corp.,* 47 F.3d 302, 309 (8th Cir.1995)); 42 U.S.C. § 2000e–5(f)(1). "[F]ailure to file suit bars [a plaintiff] from recovering under Title VII for any injuries [the plaintiff] suffered prior to the expiration of his [or her] right-to-sue period." *Id.*

Thus, the *requirement* is that Mercer *file suit* within the specified period after receiving a right-to-sue letter, *see Winbush,* 66 F.3d at 1486; 42 U.S.C. § 2000e–5(f)(1), not that she file a complaint with a right-to-sue letter attached within the required period. The right-to-sue letters, as alleged in the First Amended Complaint, and as it appears in fact, are dated November 17, 1998. Mercer's original Complaint was filed on December 2, 1998, clearly within the ninety days permitted for filing suit after receiving such letters. *Id.;* 42 U.S.C. § 2000e–5(f)(1). Even if Mercer's allegation that she has exhausted her Title VII claims constitutes

a "conclusory allegation[ ] of *law,*" *see Silver,* 105 F.3d at 397, her allegation of *fact* that she received a right-to-sue letter dated November 17, 1998, must be taken as true. *See, e.g., Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *Gross,* 186 F.3d at 1090. For the purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must reach the conclusion that, on the facts alleged and the reasonably warranted inferences therefrom, *cf. Silver,* 105 F.3d at 397 (prohibiting only "unwarranted" inferences), Mercer's Title VII claim appears to be both timely and properly exhausted, because Mercer may be able to prove the facts consistent with the allegations and the exhaustion requirements of Title VII. *See, e.g., Handeen,* 112 F.3d at 1347 ("a court should grant the [Rule 12(b)(6) ] motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' "). Thus, Mercer's Title VII claim, on the allegations taken as true, was both exhausted and timely, and the defendants' motion to dismiss Mercer's Title VII claim on this ground must be denied.

### 2. Inadequacy of the "equal protection" claim

The defendants next argue for dismissal of Mercer's "equal protection" claim on the ground that Mercer is simply trying to use § 1983 to make a Title VII claim, thus circumventing Title VII's exhaustion requirements. The defendants argue further that a Title VII discrimination claim does not automatically become a § 1983 equal protection claim and that Mercer has at most alleged a Title VII claim, because she has not alleged discrimination based on membership of a particular class, but only discrimination on an individual basis.

The court agrees with Mercer, however, that she is not attempting to enforce rights under Title VII via § 1983, when Title VII has its own comprehensive enforcement mechanism, nor is she trying to assert an untimely or unexhausted Title VII claim

under the guise of an "equal protection" claim pursuant to § 1983. As to the second point, the court held above that Mercer has sufficiently alleged that her Title VII claim is timely and properly exhausted, such that she may enforce her Title VII claim pursuant to Title VII alone.

As to the first point, it is apparent that Mercer has at least attempted to allege *both* a violation of Title VII and a violation of her constitutional rights, the latter in the form of an "equal protection" claim brought pursuant to § 1983. In *Mummelthie v. City of Mason City, Iowa,* 873 F.Supp. 1293 (N.D.Iowa 1995), this court held that a Title VII claim of discrimination and a constitutional "equal protection" claim pursuant to § 1983 may both be asserted when the plaintiff alleges that separate rights—statutory on the one hand and constitutional on the other—have been violated, and that Title VII is not and was never intended to be the exclusive remedy for federal constitutional claims of employment discrimination. *See Mummelthie,* 873 F.Supp. at 1321–1323. More specifically, the statutory and constitutional claims do not even need to stand on distinct factual bases, because the claims arise from violations of rights secured by different sources. *Id.* at 1322.

Nothing in more recent decisions requires a different result here. *See Johnson v. City of Fort Lauderdale,* 148 F.3d 1228, 1231 (11th Cir.1998) (observing that "[t]he legislative history accompanying Title VII reflects congressional intent to retain, rather than preempt, § 1983 as a parallel remedy for unconstitutional public sector employment discrimination," and citing circuits so holding); *Arrington v. Cobb County,* 139 F.3d 865, 872 (11th Cir.1998) (fire chief could pursue both equal protection claim based on gender discrimination pursuant to § 1983 and Title VII gender discrimination claim, because the first claim was based on violation of the constitutional and the second was based on violation of the statute, even though the elements of the claims were identical).

Furthermore, the Eighth Circuit Court of Appeals has held that, in the employment discrimination context, the elements of a § 1983 equal protection claim are the same as those of a Title VII claim, *see, e.g., Richmond v. Board of Regents,* 957 F.2d 595, 598 (8th Cir.1992), and has considered both claims in the same action, *see Maitland v. University of Minnesota,* 155 F.3d 1013 (8th Cir.1998); *Thomas v. City of Omaha,* 63 F.3d 763 (8th Cir.1995), or in consecutive actions, *see De Llano v. Berglund,* 183 F.3d 780, 782 (8th Cir.1999), in the latter case concluding that the differences in the parties subject to suit prevented the prior action from making the second *res judicata. See De Llano,* 183 F.3d at 782. The court notes that here, although Byrne may not be held individually liable on Mercer's Title VII claim, *see Bales v. Wal-Mart Stores, Inc.,* 143 F.3d 1103, 1111 (8th Cir.1998) (stating " '[o]ur Court quite recently has squarely held that supervisors may not be held individually liable under Title VII,' " quoting *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.,* 121 F.3d 446, 447 (8th Cir.1997), and citing *Spencer v. Ripley County State Bank,* 123 F.3d 690, 691–92 (8th Cir.1997) (*per curiam* )), he can be held individually liable on her constitutional claim. *See De Llano,* 183 F.3d at 782.

Nor does the court find Mercer's allegations of an "equal protection" violation to be insufficient. To prove an equal protection claim, a public employee must show (1) that he or she was singled out and treated differently from persons similarly situated, and (2) that the plaintiff was singled out on the basis of a prohibited characteristic, such as gender. *See Ellebracht v. Police Bd. of Metro. Police Dep't of City of St. Louis,* 137 F.3d 563, 566 (8th Cir.1998). Therefore, this court concludes that a public employee sufficiently alleges discriminatory discharge in violation of equal protection rights where the employee alleges that he or she was singled out for termination on the basis of gender, while employees of the opposite gender

guilty of the same conduct upon which termination was purportedly based were not terminated. *Cf. Backlund v. Hessen,* 104 F.3d 1031, 1032 (8th Cir.1997) (allegations that a fire department discriminated against the plaintiff in violation of the equal protection clause, because he was not related to any present or past fire department employees was sufficient to state a claim). This much Mercer has done.

Therefore, the defendants' motion to dismiss Mercer's equal protection claim will be denied.

### 3. Insufficiency of the "due process" claim

The defendants seek dismissal of Mercer's "due process" claim on the ground that simple defamation is not enough to support a claim pursuant to 42 U.S.C. § 1983, and Mercer has not alleged that she could be dismissed only for cause, so that Mercer had no protectable liberty or property interest in her continued public employment. The court also finds the defendants' motion to dismiss Mercer's due process claim to be without merit.

As the Eighth Circuit Court of Appeals recently explained, " 'To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake.' " *Spitzmiller v. Hawkins,* 183 F.3d 912, 915 (8th Cir.1999) (quoting *Gordon v. Hansen,* 168 F.3d 1109, 1114 (8th Cir.1999) *(per curiam )); accord Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Graning v. Sherburne County,* 172 F.3d 611, 616 (8th Cir.1999) ("A state employee is entitled to a hearing or some related form of due process before being deprived of a constitutionally protected property or liberty interest.") (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)); *Johnson v. City of West Memphis,* 113 F.3d 842, 843 (8th Cir.1997) ("The Due Process Clause requires the government to provide an employee with procedural due process if the employee stands to lose a constitu-tionally protected property or liberty interest.") (also citing *Roth,* 408 U.S. at 569–70, 92 S.Ct. 2701).

■ "An employee's liberty interests are implicated when, in connection with the employee's discharge, a government official makes accusations that seriously damage the employee's standing in the community or foreclose other employment opportunities." *Johnson,* 113 F.3d at 843. "A public employee is [therefore] entitled to notice and a name-clearing hearing when fired under circumstances imposing a stigma on her professional reputation." *Graning,* 172 F.3d at 616. However, no liberty interest is implicated if there are no public accusations that would "stigmatize" the employee. *See Johnson,* 113 F.3d at 844 (there had been no public accusations stigmatizing the employee, and hence no liberty interest was implicated, when the public comment of a councilwoman simply expressed her view that it was inappropriate for the utility commission to do construction work on private property).

The Eighth Circuit Court of Appeals acknowledged some time ago that there is "a line of public employee cases holding that a public body may not discharge anyone—even an employee without a contractual or property right in his job—and make public reasons for the discharge involving stigma or obloquy, without giving the employee a right to clear his or her name at some kind of a due-process hearing." *Bell v. Sellevold,* 713 F.2d 1396, 1401 (8th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 978, 79 L.Ed.2d 215 (1984). However, such a "liberty theory" fails if the "defendant never made public any stigmatizing reasons for [its] action." *See id.; accord Johnson,* 113 F.3d at 844 (no public accusations concerning the plaintiff's competence were made by the defendants).

■ Here, Mercer has alleged that Byrne made stigmatizing statements to the public at the time of her discharge. Specifically, she alleges that Byrne "made statements to the media which stigmatized

Plaintiff as a person incapable of performing the duties of a police officer." First Amended Complaint, ¶ 8(b). Furthermore, she alleges that she "was offered no opportunity in a public hearing to rebut those stigmatizing statements, and was thus deprived of a constitutionally protected occupational liberty interest without due process of law." *Id.* These allegations are sufficient to state a due process claim. First, the allegations are that Mercer's liberty interest was implicated, "when, in connection with [Mercer's] discharge, [Chief Byrne] [made] accusations that seriously damage[d] [Mercer's] standing in the community or foreclose[d] other employment opportunities [as a police officer]." *Johnson,* 113 F.3d at 843. The allegations are also sufficient to state a claim that Mercer did not receive the process due her in such circumstances, which should have included "notice and a name-clearing hearing when fired under circumstances imposing a stigma on her professional reputation." *Graning,* 172 F.3d at 616.

Therefore, the defendants' motion to dismiss this claim will also be denied.

### 4. Insufficiency of allegations of municipal liability

The defendants argue that Mercer cannot assert any constitutional claim against the City, because she has failed to allege that any wrongful action was taken as the result of a policy or practice of the City. Instead, defendants argue that Mercer has alleged, at best, a single incident of purportedly unconstitutional behavior. This contention by the defendants is also groundless.

■ It is well-settled that "a plaintiff can establish municipal liability by proving injury from the execution of an 'official policy' or from actions that are so pervasive that they become 'custom or usage' with the force of law." *Ware v. Jackson County,* 150 F.3d 873, 885 (8th Cir.1998). However, it is equally well-settled that municipal liability also attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to

the action ordered." *Id.* (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)); *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 652 (8th Cir.1998); *Miller v. Compton,* 122 F.3d 1094, 1100 (8th Cir.1997). Indeed, contrary to the defendants' assertions, " 'municipal liability for violating constitutional rights may arise from a single act of a policy maker.' " *Springdale Educ. Ass'n,* 133 F.3d at 652 (quoting *McGautha v. Jackson County,* 36 F.3d 53, 56 (8th Cir.1994)); *Miller,* 122 F.3d at 1100 (also quoting *McGautha* ). Where municipal liability depends upon a single act of a policymaker, " 'that act must come from one in an authoritative policy making position and represent the official policy of the municipality.' " *Springdale Educ.,* 133 F.3d at 652 (quoting *McGautha* ); *Miller,* 122 F.3d at 1100 (also quoting *McGautha* ). " '[T]he authority to make municipal policy is necessarily the authority to make final policy.' " *Ware,* 150 F.3d at 885 (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). "Whether a person is an authorized policymaker for purposes of assigning municipal liability is a question of state law." *Springdale Educ. Ass'n,* 133 F.3d at 652.

■ Here, as in *Ware,* the question of whether the City can be held liable for a single purportedly unconstitutional act by Byrne "is whether the [City] delegated to [Byrne] its power to establish final employment policy with respect to the discipline of officers"; "[i]f so, then '[Byrne's] decisions would represent [City] policy and could give rise to municipal liability.' " *Ware,* 150 F.3d at 886 (quoting *Pembaur,* 475 U.S. at 483 n. 12, 106 S.Ct. 1292). Mercer has alleged that Byrne was the Chief of Police for the City, acting with City's "full authorization," at the time Byrne discharged Mercer. First Amended Complaint, ¶¶ 4 & 6. Thus, Mercer could prove a set of facts consistent with these allegations that would establish a basis for municipal liability of the City for

a single unconstitutional act of Byrne, the City's Chief of Police, and her claim for municipal liability of the City for unconstitutional conduct by Byrne is not subject to dismissal. *See, e.g., Handeen,* 112 F.3d at 1347 ("a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' ") (quoting *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229).

### 5. *Byrne's qualified immunity*

Finally, the defendants challenge the constitutional claims against Byrne on the ground that he has "qualified immunity." They argue that Byrne was performing a discretionary function when he terminated Mercer, and that his action did not violate Mercer's clearly established statutory or constitutional rights. The defendants contend that the law was not clearly established that an individual could face liability for a constitutional violation that at most alleges nothing more than a Title VII claim. This contention fares no better than the defendants' others.

The Eighth Circuit Court of Appeals recently explained the requirements for qualified immunity as follows:

> Officials are entitled to qualified immunity only to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The standard is one of objective reasonableness, and amounts to whether, [at the time of the wrongful conduct, the defendant] knew or reasonably should have known his conduct violated a clearly established right. *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738, 73 L.Ed.2d 396; *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). Therefore, the first step in the analysis must be to determine whether [the plaintiff] had a clearly established statutory or constitutional right. In *Anderson v. Creighton,* 483 U.S. 635,

640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the Supreme Court stated that, in order for a person to have a clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Also, if the official can show "extraordinary circumstances" and can demonstrate that the law defining the violation was unknown and unknowable, he will be entitled to immunity for his actions. *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396; *Slone v. Herman,* 983 F.2d 107, 109 (8th Cir. 1993).

*Hedges v. Poletis,* 177 F.3d 1071, 1074 (8th Cir.1999). The Eighth Circuit Court of Appeals has also "held that 'qualified immunity is an affirmative defense,' 'which will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.' " *Whisman v. Rinehart,* 119 F.3d 1303, 1309 (8th Cir. 1997) (quoting *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996), in turn quoting *Weaver v. Clarke,* 45 F.3d 1253, 1255 (8th Cir.1995)).

No such immunity is established on the face of Mercer's complaint, not least because the defendants' assertion of Byrne's qualified immunity rests on a mischaracterization of Mercer's § 1983 claims. Mercer has not asserted a § 1983 claim premised on a violation of Title VII. Rather, she has asserted § 1983 claims based on alleged violations of her constitutional rights to due process and equal protection. Furthermore, as discussed above, it would appear that the law is clearly established that a public employee may not be dismissed on the basis of her gender, while similarly situated male employees are treated differently, in violation of her equal protection rights, and that a public employee is entitled to due process when her liberty interest is implicated by accusations of a government official, in connection with the employee's discharge, that seriously damage the employee's standing

in the community or foreclose other employment opportunities. Mercer has alleged such claims sufficiently to preclude dismissal on qualified immunity grounds before the affirmative defense has ever been pleaded or any facts pertinent thereto developed in the record; in a word, she can prove a set of facts consistent with her allegations that would make a qualified immunity defense unavailable. *See, e.g., Handeen,* 112 F.3d at 1347 ("a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' ") (quoting *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229).

Furthermore, "qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation." *Whisman,* 119 F.3d at 1309. The court concludes that it is more appropriate to defer consideration of the adequacy of Byrne's qualified immunity defense until the court is presented with a summary judgment motion, after the affirmative defense has been pleaded, and some discovery has been conducted, than it is for the court to consider the sufficiency of the affirmative defense at the pre-answer stage of the proceedings.

Thus, this portion of the defendants' renewed motion to dismiss must also fail.

### III. CONCLUSION

The court finds the defendants' renewed motion to dismiss to be entirely without merit. As to each of the defendants' contentions, the court finds that Mercer has pleaded her claims sufficiently and that relief could indeed be granted under some set of facts that could be proved consistent with her allegations, and the court finds no insuperable bar to any of her claims at this stage of the proceedings.

Therefore, defendants' April 12, 1999, renewed motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures is **denied** in its entirety.

**IT IS SO ORDERED.**