**Tommy N. SOPHAPMYSAY as Administrator of the Estate of Ammy Dovangsibountham, Plaintiff,**

v.

**CITY OF SERGEANT BLUFF, Iowa; Chief of Sergeant Bluff, Iowa Police Department David McFarland; Woodbury County; Woodbury County Attorney Tom Mullin; Assistant Woodbury County Attorney Paul Kittridge; Assistant Woodbury County Attorney Machelle Lauters; Iowa Public Defenders Office; William L. Wegman, Iowa Public Defender; Assistant Iowa**

Public Defender Greg Jones; Assistant Iowa Public Defender Michelle Driebilbus; Iowa Department of Human Services; Terri Devoss; Lori Limits and Lori Davenport, as Administrator of the Estate of Sounthaly Keosay, Defendants.

No. C00–4051–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Dec. 18, 2000.

Shelley A. Horak, Sioux city, IA, for plaintiff.

Gordon E. Allen, Deputy Atty. Gen., for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING STATE DEFENDANTS' MOTION TO DISMISS

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ....................................1183
 A. Procedural Background ............................................1183
 B. Factual Background ...............................................1184

II. LEGAL ANALYSIS .......................................................1185
 A. Standards For Rule 12(b)(6) Motions To Dismiss .......................1185
 B. Analysis Of Claims ...............................................1187
 1. Eleventh Amendment ........................................1187
 a. The constitutional bar .......................................1187
 b. Suit "against the "state" ....................................1188
 c. Eleventh Amendment immunity and exceptions to it .............1189
 i. Congressional abrogation ................................1189

 ii. *State waiver* ..........................................1190
 iii. *The nature of the waiver* ...........................1190
 iv. *Failure to meet the "stringent" standard* ...................1190
 v. *Express waiver* ........................................1191
 d. *Waiver in this case* ........................1192
 2. **Substantive Due Process Claim** ..................................1193
 a. *DeShaney decision and its progeny* .....................1193
 b. *The state-created danger exception* ............................1194
 c. *Analysis* ............................................1195
 3. **Public defenders actions under color of state law** ...................1195

**III. CONCLUSION** ..................................................1196

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

Plaintiff Tommy N. Sophapmysay, in his capacity as the administrator of the estate of Ammy Dovangsibountham, filed this lawsuit on May 12, 2000, against various state and county officials and employees and Lori Davenport as the administrator of the estate of Sounthaly Keosay. At the center of this lawsuit is Ammy's murder by her stepfather Keosay on March 17, 1999. Keosay then killed himself. In Count I of his complaint, Sophapmysay alleges that all the named defendants violated 42 U.S.C. § 1983 by violating Ammy's rights to due process of law by failing to protect her from Keosay. Specifically, Sophapmysay alleges that defendants failed to fulfill their affirmative duty to protect Ammy from bodily harm even though defendants had knowledge that Keosay threatened Ammy's life if she testified against him. In addition, Sophapmysay alleges that defendants' established policy, practice, or custom of failing to protect juvenile child abuse witnesses permitted Keosay to murder Ammy. Sophapmysay also alleges that defendants had actual or constructive notice of their policy, practice, or custom of failing to protect juvenile child abuse witnesses. In Count II, Sophapmysay alleges a claim of negligence against defendants City of Sergeant Bluff, Woodbury County, Tom Mullin, in his official capacity as Woodbury County Attorney, William Wegman, in his official capacity as Iowa State Public Defender, and Jessie Rasmussen, in his official capacity as Director of the Iowa Department of Human Serves. Sophapmysay asserts that these defendants failed to properly supervise and control the conduct of defendants Dave McFarland, Paul Kitteridge, Machelle Lauters, Terri DeVoss, Lori Limits, and Michelle Driebilbus. In Count III, Sophapmysay alleges a claim for wrongful death against all named defendants. Sophapmysay contends that defendants created a special relationship with Ammy by requesting that she provide information against Keosay and then failed to protect her from Keosay. In Count IV, Sophapmysay alleges a claim for tortious infliction of emotional distress against all named defendants. In Count V, Sophapmysay alleges a negligence claim against defendants Iowa Public Defender, Greg Jones and Michelle Driebilbus in their individual capacity. Sophapmysay contends that these defendants had an attorney client relationship with Ammy which they breached by failing to follow up on Keosay's bail status, failing to appear and represent her as guardian ad litem in the criminal prosecution against Keosay, and failing to advise Ammy that she had a right to representation by a guardian ad litem in all hearings concerning the criminal charges against Keosay. In "Count V," Sophapmysay asserts a claim of respondeat superior against defendants City of Sergeant Bluff, Woodbury County, the Iowa Department of Human Resources and the Iowa Public Defenders Office.[1] In

---

**1.** Sophapmysay's complaint contains two Count V's. Therefore, for the purposes of this order, the court will refer to Sophapmysay's negligence claim as Count V and will refer to his respondeat superior claim as "Count V".

Count VI, Sophapmysay asserts claim for wrongful death against defendant Keosay and asserts that he deliberately or negligently caused her death.[2] Sophapmysay asserts that under Iowa law these defendants are liable for the torts committed by their employees when the employees are acting within the scope of their employment.

Defendants Iowa Public Defender's Office, William Wegman, Greg Jones, Michelle Driebilbus, Iowa Department of Human Services, Jessie Rasmussen, Terri DeVoss and Lori Limits have moved to dismiss various portions of the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, these defendants assert that Sophapmysay's due process claim must be dismissed because Sophapmysay has failed to plead a sufficient special relationship so as to state a constitutional claim. Defendants Iowa Public Defender's Office and the Iowa Department of Human Services argue that the claims against them are barred by the Eleventh Amendment. Defendants further assert that the claims contained in Count II against defendants William Wegman and Jessie Rasmussen must be dismissed because these defendants are being sued in their official capacity which is barred by the Eleventh Amendment. Defendants further contend that Counts III, IV, V, "V" and VI are barred by the Iowa Tort Claims Act. Defendants also contend that Sophapmysay's claims for respondeat superior against them fail to state claims for relief because, under Iowa law, claims of respondeat superior against state agencies are barred. Finally, defendants contend that any tort claims against them for punitive damages are barred by Iowa law. Plaintiff Sophap-

mysay filed a timely response to defendants' motion to dismiss.

Before turning to a legal analysis of the motion to dismiss, the court must first identify the standards for disposition of a motion to dismiss, as well as the factual background of this case as set forth in the complaint.

### B. Factual Background

The factual background for disposition of these motions is based entirely on the facts as alleged in Sophapmysay's May 12, 2000, complaint. According to the complaint, defendant Greg Jones was the Assistant Public Defender in charge of the Sioux City, Iowa, office. He was employed by the State of Iowa. Michael Williams and Michelle Driebilbus were Assistant Public Defenders and employed by the State of Iowa.[3] Defendant Jessie Rasmussen was the Director of the Iowa Department of Human Services and employed by the State of Iowa. Defendants Terri DeVoss and Lori Limits were employees of the Iowa Department of Human Services and employees of the State of Iowa.

Ammy lived with her mother, Anna Keosay, in Sergeant Bluff, Iowa. Ammy's stepfather Sounthaly Keosay ("Keosay") was also living with them. In 1996, Keosay began to sexually molest Ammy. Ammy complained to her mother about the abuse but Keosay continued to molest Ammy until January 20, 1999.

On January 22, 1999, Ammy ran away from home. Ammy left her mother a letter in which she explained that she was leaving home because of the sexual abuse. Keosay, however, found the letter and ripped it up before Ammy's mother could

---

**2.** On July 24, 2000, Sophapmysay voluntarily dismissed her claims against Lori Davenport as administrator of the estate of Sounthaly Keosay.

**3.** The court notes that Michael Williams was not included in the complaint's caption nor does his full name appear in that section of the complaint entitled "PARTIES." Rather, his possible identification in that section of

the complaint is limited to the statement that "Defendants Jones, Williams and Driebilbus are sued in their official and individual capacities." Complaint at ¶ 13. The State of Iowa defendants have not included his name in the text of their motion to dismiss. For the purposes of consideration of the State of Iowa defendants' motion to dismiss, the court will not presume that he is a named party to this lawsuit.

read it. Ammy's mother reported Ammy missing to the police on January 22, 1999.

On January 29, 1999, defendant David McFarland located Ammy. McFarland and Iowa Department of Human Services worker Terri DeVoss interviewed Ammy and inquired as to why she ran away. Ammy was hesitant to say why she had left home. McFarland and DeVoss promised Ammy that she would be protected. Ammy then told McFarland and DeVoss that she had been sexually abused by Keosay. Ammy was taken by McFarland and DeVoss to the Crittendon Center in Sioux City.

After taking Ammy to the Crittendon Center, McFarland and DeVoss went to Ammy's home and informed her mother. DeVoss found Anna Keosay's reaction minimized Ammy's abuse. DeVoss prepared the paperwork necessary to commence juvenile court proceedings to protect Ammy from Keosay. In her paperwork, DeVoss notes that Ammy had revealed that Keosay had been sexually abusing her for three years, her mother seemed to minimize the abuse, and that if she was returned to the home she would be in imminent danger. DeVoss's paperwork, however, failed to note that Keosay had threatened Ammy's life.

On February 16, 1999, Keosay was arrested and charged with sexually abusing Ammy. Keosay's bond was set at $50,000. On February 16, 1999, defendant McFarland prepared a "complaint and affidavit" in which he declared that Ammy had told him that Keosay had threatened to kill her if she told anyone about the abuse. McFarland's affidavit was filed in Keosay's criminal case.

On February 24, 1999, with Keosay still in jail, the Woodbury County Attorney's Office, acting through Machelle Lauters, the Iowa Department of Human Services, acting through Lori Limits, the Iowa Public Defender's Office, acting through Michelle Driebilbus, and Anna Keosay all agreed that Ammy could safely return home. Ammy returned home with her mother on February 24, 1999.

On March 3, 1999, the Woodbury County Attorney's Office, acting through Paul Kittridge, entered into an agreement with the Iowa Public Defender's Office, acting through Michael Williams, to lower Keosay's bond to $13,000. Defendant Kittridge did not contact or consult Lauters regarding the reduction of Keosay's bond. Lauters did not inform Kittridge that Ammy had gone home because Keosay was not expected to be released on bond. Lauters did not keep track of Keosay's bond status. Williams did not consult with or inform Driebilbus about the agreement regarding Keosay's bond status. Kittridge and Williams presented the agreement to an Iowa state judge who approved it.

Driebilbus did not enter her appearance as guardian ad litem for Ammy in the Iowa criminal case against Keosay. Neither Driebilbus or Kittridge informed Ammy of her right to have a guardian ad litem appointed to represent her.

On March 3, 1999, Keosay was released on bond. Between the time of his arrest and the time of his release, Keosay made twelve calls to Ammy's mother, Anna Keosay. On March 3, 1999, Ammy learned that Keosay has been released. Upset, Ammy called McFarland and yelled that Keosay was going to kill her. McFarland reassured Ammy that she would be all right but took no steps to protect Ammy or her mother. On March 17, 1999, Keosay broke into Ammy's home and killed her and her mother.

## II. LEGAL ANALYSIS

### A. Standards For Rule 12(b)(6) Motions To Dismiss

A motion to dismiss may be made, *inter alia*, for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to review only the pleadings to determine whether the plead-

ings state a claim upon which relief can be granted. FED.R.CIV.P. 12(b).[4] Such motions "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989).

In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiffs complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1303–04 (8th Cir.1997) ("In considering a motion to dismiss, we assume all facts in the complaint are true, construe the complaint in the light most favorable to the plaintiff, and affirm the dismissal only if 'it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief,' " quoting *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994)); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir.1997) ("In considering a motion to dismiss, the court must construe the complaint liberally and assume all factual allegations to be true."); *First Commercial Trust Co., N.A. v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir.1996) (same).

The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987), and 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

---

**4.** However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED.R.CIV.P. 12(b)(6); *see also Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 & n. 3 (8th Cir.1996) (because the district court relied on matters outside the complaint in ruling on a Rule 12(b)(6) motion, "the district court had to treat the [defendant's] motion to dismiss as a motion for summary judgment and apply the relevant standards for summary judgment," and further noting that "[t]he standards for dismissing a complaint under Rule 12(b)(6) are substantially different" from those applicable to a Rule 56 summary judgment motion; therefore it was inappropriate for the district court to fail to specify whether it was disposing of an issue according to summary judgment or Rule 12(b)(6) standards). Even where matters outside of the pleadings are presented to the court, however, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss." *Skyberg v. United Food and Commercial Workers Int'l Union, AFL—CIO*, 5 F.3d 297, 302 n. 2 (8th Cir.1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id.* No other materials have been offered in support of the motion to dismiss in this case. Therefore, the motion to dismiss will not be disposed of as provided in Rule 56, but only according to the standards stated herein.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Doe,* 107 F.3d at 1304 (dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief,'" quoting *Coleman,* 40 F.3d at 258); *WMX Techs., Inc.,* 105 F.3d at 1198 ("Dismissal should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts that would entitle relief," citing *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995) (internal quotations omitted).

## B. Analysis Of Claims

### 1. Eleventh Amendment

Defendants seek dismissal of the claims against the state agencies and the individual defendants, in their official capacity only with respect to Count I, on the ground that the claims are all barred under the Eleventh Amendment to the United States Constitution.

### a. The constitutional bar

The Eleventh Amendment to the United States Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. CONST. amend. XI. The Eleventh Amendment, as interpreted by the Supreme Court, is born of the recognition of the "vital role of the doctrine of sovereign immunity in our federal system":

> A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued. As Justice Marshall well has noted, "because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of federal judicial power has long been considered to be appropriate in a case such as this." *Employees of Dept. of Publ;ic Health v. Dept. of Public Health and Welfare,* 411 U.S. 279, 294, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (concurring in result). Accordingly, in deciding this case we must be guided by "[t]he principles of federalism that inform Eleventh Amendment doctrine." *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (footnotes omitted; emphasis in the original). The Eighth Circuit Court of Appeals has observed,

> Almost since its enactment, courts have struggled with the boundaries created by this Amendment. These endeavors have resulted in the creation of many legal fictions which control the Eleventh Amendment's interpretation. For example, although the Amendment's terms bar only suits against states by non-residents, an early case established that the Eleventh Amendment also prohibits

suits against a state by that state's residents. *Hans v. Louisiana*, 134 U.S. 1, 15–16, 10 S.Ct. 504, 507–08, 33 L.Ed. 842 (1890). The Amendment's terms address only federal suits in law and equity, yet it has been construed to also bar certain admiralty suits. *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n. 17, 102 S.Ct. 3304, 3313–14 n. 17, 73 L.Ed.2d 1057 (1982). Other cases have interpreted the Eleventh Amendment to prohibit suits against a state by both foreign nations and Indian tribes. *Principality of Monaco v. Mississippi*, 292 U.S. 313, 330, 54 S.Ct. 745, 751, 78 L.Ed. 1282 (1934); *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1141 (8th Cir.1974).

*Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 504–05 (8th Cir.1995) (footnote omitted); *see also Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir.2000) ("The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought."); *Williams v. Missouri*, 973 F.2d 599, 599–600 (8th Cir.1992) ("The Eleventh Amendment bars suits against a State by citizens of that same State in federal court," citing *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

■ Although the bar of the Eleventh Amendment to suits against the state itself " 'exists whether the relief sought is legal or equitable,' " *Williams*, 973 F.2d at 600 (quoting *Papasan*, 478 U.S. at 276, 106 S.Ct. 2932), the Eighth Circuit Court of Appeals has noted that "[o]f course, legal fictions have also eroded Eleventh Amendment immunity by, among other things, permitting suits against state officials for injunctive and prospective relief." *Thomas*, 50 F.3d at 505 (citing *Edelman v. Jordan*, 415 U.S. 651, 663–64, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)); *see also Glick v. Henderson*, 855 F.2d 536, 540 (8th Cir.1988) (recognizing the exception for suits against state officials for injunctive relief, citing *Pennhurst*, 465 U.S. at 104,

104 S.Ct. 900, and *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and explaining "that this exception was based on the theory that because a state is without power to authorize a state official to act in violation of federal law, any state official taking such actions is acting beyond his official authority and is thereby 'stripped of his official or representative character,' " quoting *Pennhurst*, 465 U.S. at 104, 104 S.Ct. 900).

### b. Suit "against" the "state"

In *Thomas*, the Eighth Circuit Court of Appeals also provided an outline of the analysis to be used in interpreting the scope of Eleventh Amendment immunity:

Given the nature of Eleventh Amendment jurisprudence, we reject a "plain words" interpretation of the Eleventh Amendment....

Rather than look to the Amendment's literal terms, we will more generally examine Eleventh Amendment jurisprudence to determine precisely what qualifies as a suit against the state. " 'What is a suit? We understand it to be the prosecution, or pursuit, of some claim, demand, or request. In law language, it is the prosecution of some demand in a Court of Justice.' " *Missouri v. Fiske*, 290 U.S. 18, 26, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) (quoting *Cohens v. Virginia*, 19 U.S. 264, 6 Wheat. 264, 407, 5 L.Ed. 257 (1821)). A later articulation of the Eleventh Amendment's reach characterizes a suit against the state more concretely. A suit is against the state if " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908–09 n. 11, 79 L.Ed.2d 67 (1984) (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)).

*Thomas*, 50 F.3d at 505 (footnotes omitted). In the present case, it is undisputed

that the State of Iowa has the right to assert Eleventh Amendment immunity. It is also readily apparent, applying the standards stated in *Thomas*, this action is a "suit" within the meaning of the Eleventh Amendment. *Thomas*, 50 F.3d at 505. Sophapmysay is prosecuting a claim in this court of justice, *id.* (citing *Fiske*, 290 U.S. at 26, 54 S.Ct. 18, in turn citing *Cohens*, 6 Wheat. at 407, 5 L.Ed. 257), and a judgment on her claims would indeed "expend itself on the public treasury or domain, or interfere with the public administration,' or ... the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Thomas*, 50 F.3d at 505 (quoting *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101 n. 11, 465 U.S. 89, in turn quoting *Dugan*, 372 U.S. at 620, 83 S.Ct. 999). The court must therefore consider whether the claims against the state agencies and the individual defendants are barred by the Eleventh Amendment.

### c. Eleventh Amendment immunity and exceptions to it

■ "When a state is directly sued in federal court, it must be dismissed from litigation upon its assertion of Eleventh Amendment immunity unless one of two well-established exceptions exists." *Barnes v. Missouri*, 960 F.2d 63, 64 (8th Cir.1992); *see also Egerdahl; Williams*, 973 F.2d at 600 (quoting *Barnes* for this proposition). Those two exceptions are "congressional abrogation" and "state waiver." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir.1995); *Williams*, 973 F.2d at 600; *Barnes*, 960 F.2d at 64.

■ ***i. Congressional abrogation.*** As to congressional abrogation, in *Pennhurst*, the Supreme Court concluded that "Congress has power with respect to rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity." *Pennhurst*, 465 U.S. at 99, 104 S.Ct. 900; *see also Egerdahl*, 72 F.3d at 619 ("Congress may pass legislation under the Commerce Clause or Section 5 of the Fourteenth Amendment to override states' Eleventh Amendment Immunity," citing *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 14–23, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), and *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)); *Glick*, 855 F.2d at 540 (quoting *Pennhurst*). This exception applies only when there is "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several states.'" *Pennhurst*, 465 U.S. at 99, 104 S.Ct. 900; *Seminole Tribe of Florida. v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (" 'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute,'" quoting *Dellmuth v. Muth*, 491 U.S. 223, 229–30, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989)); *accord Egerdahl*, 72 F.3d at 619 ("Congress must make its intention to abrogate states' immunity 'unmistakably clear in the language of the statute,'" quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)); *Glick*, 855 F.2d at 540. To ascertain whether Congress abrogated the states' Eleventh Amendment immunity in enacting legislation, a court must examine two issues: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,' and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe of Florida*, 517 U.S. at 55, 116 S.Ct. 1114 (internal citations omitted) (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)); *see also Dellmuth*, 491 U.S. at 229–30, 109 S.Ct. 2397; *Atascadero State Hosp.*, 473 U.S. at 243, 105 S.Ct. 3142.[5]

---

5. In *Seminole Tribe of Florida*, the United States Supreme Court held that Congress did not possess the authority under the Indian Commerce Clause to abrogate Eleventh Amendment state sovereign immunity. *Seminole Tribe of Florida*, 517 U.S. at 47, 116 S.Ct.

1114. In doing so, the Court overruled its prior decision in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), where it had held that the Commerce Clause gave Congress the power to abrogate

This exception, however, is inapplicable here since Sophapmysay has not asserted the existence of such a congressional abrogation. Thus, the court will turn its attention to the state waiver exception.

■ *ii. State waiver.* Turning to the "state waiver" exception, the Eighth Circuit Court of Appeals has reiterated that where a state or state agency waives or intends to waive its immunity, "of course, no Eleventh Amendment problem exists." *Thomas,* 50 F.3d at 505. However, just as congressional abrogation requires unmistakable language in the federal statute, "[a]s a general matter, only unmistakable and explicit waiver of Eleventh Amendment immunity" by the state will suffice. *Id.* at 506 (citing *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 305, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990), *Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. 3142, and *Edelman,* 415 U.S. at 673, 94 S.Ct. 1347); *Angela R. ex rel. Hesselbein v. Clinton,* 999 F.2d 320, 325 (8th Cir.1993) ("While Eleventh Amendment immunity can be waived, such waiver must be unequivocally expressed," citing *Edelman,* 415 U.S. at 673), 94 S.Ct. 1347.

■ *iii. The nature of the waiver.* In order to constitute a waiver of Eleventh Amendment immunity by the state, a state statute " 'must specify the State's intention to subject itself to suit in federal court." *Angela R.,* 999 F.2d at 325 (quoting *Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. 3142, and also citing *Feeney,* 495 U.S. at 306–08, 110 S.Ct. 1868, and *Burk v. Beene,* 948 F.2d 489, 493–94). Furthermore, the Eighth Circuit Court of Appeals has described the Supreme Court's test of waiver as "stringent." *Hankins v. Finnel,* 964 F.2d 853, 856 (8th Cir.), *cert. denied sub nom. Missouri v. Hankins,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); *Burk v. Beene,* 948 F.2d 489, 493

the states' Eleventh Amendment immunity, in addition to its power under section five of the Fourteenth Amendment. *See Seminole Tribe of Florida,* 517 U.S. at 65, 116 S.Ct. 1114. After *Seminole Tribe of Florida,* section five of

(8th Cir.1991). As the Eighth Circuit Court of Appeals reemphasized this fall,

A State "is deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the test as will leave no reason for any other reasonable construction."

*Cooper,* 226 F.3d at 969 (quoting *Atascadero,* 473 U.S. at 239–40, 105 S.Ct. 3142); *see Hankins,* 964 F.2d at 856 (same) (quoting *Atascadero,* 473 U.S. at 239–40, 105 S.Ct. 3142).

*iv. Failure to meet the "stringent" standard.* The Eighth Circuit Court of Appeals has been reluctant to find waivers meeting the "stringent" standard required. For example, in *Angela R.,* the Eighth Circuit Court of Appeals found that an Arkansas statute that acknowledged the pendency of the case then before the federal court nonetheless fell "considerably short of the 'unequivocal waiver' of Eleventh Amendment immunity that *Atascadero* requires." *Angela R.,* 999 F.2d at 325. The court therefore found that the Eleventh Amendment barred an action to enforce a settlement agreement in federal court. *Id.* In *Burk,* a state indemnification statute that referred to damages awards by federal courts was nonetheless read *not* to provide "a clear and unequivocal waiver of the state's Eleventh Amendment immunity." *Burk,* 948 F.2d at 493. The statute in question in *Burk* provided that

[t]he State of Arkansas shall pay actual, but not punitive, damages adjudged by a state or federal court ... against officers or employees of the State of Arkansas ... based on an act or omission by the officer or employee while acting without malice and in good faith within the course and scope of his employment and in the performance of his official duties.

the Fourteenth Amendment remains as the sole authority by which Congress may abrogate the States' immunity. *Id.* at 60, 116 S.Ct. 1114.

ARK.CODE ANN. § 21–9–203(a) (Michie 1987); *Burk,* 948 F.2d at 493 n. 3 (quoting the Arkansas statute). The court rejected the plaintiff's argument that it would be unnecessary for the legislature to provide for indemnification for liability in federal lawsuits if in fact the state had not waived its immunity to suits for damages in federal court. *Burk,* 948 F.2d at 493. The lack of unequivocal waiver in this indemnification statute was bolstered by the court's finding that another statute provided "quite explicitly, that state officials are entitled to immunity in ordinary circumstances." *Id.* (citing ARK.CODE ANN. § 19–10–305(a) (Michie Supp.1991), with emphasis in the original). Waivers may also be "partial" rather than "general." *Hankins,* 964 F.2d at 856 (citing cases). Thus, in *Hankins,* the court found that the state had waived its immunity only as to the judgment in the case by participating in a trial of the case on the merits. *Id.* Similarly, in *Barnes,* the court found that a waiver of immunity in a Missouri statute, MO.REV.STAT. § 537.600, did not include the types of claims raised by the plaintiff, which were claims for violation of the First Amendment, the Fourteenth Amendment, and the First Amendment Privacy Protection Act of 1980, 42 U.S.C. § 2000aa–6(a), arising from the defendants obtaining the plaintiff's arrest record and disseminating it to the public. *Barnes,* 960 F.2d at 65. Most recently, in *Cooper,* the Eighth Circuit Court of Appeals found that the fact that Minnesota waived its immunity to suit in Minnesota's state courts was insufficient to waive its Eleventh Amendment immunity. *Cooper,* 226 F.3d at 969.

*v. Express waiver.* The court therefore returns to Supreme Court precedent to identify language that would be sufficiently explicit to constitute a state's waiver of its Eleventh Amendment immunity to suits in federal court. In *Feeney,* the Court found that both New York and New Jersey had "expressly consent[ed] to suit in expansive terms" with language that the states "consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise ... against the Port of New York

Authority." *Feeney,* 495 U.S. at 306, 110 S.Ct. 1868 (citing N.J.STAT.ANN. § 32:1–157 (West 1963), and N.Y.UNCONSOL.LAWS § 7101 (McKinney 1979)). However, the Court rejected the assertion that this expansive consent could be interpreted to encompass suit in federal court as well as state court, because "such a broadly framed provision may also reflect only a State's consent to suit in its own courts." *Id.* The Court nonetheless found an express waiver by resolving any ambiguity in the consent to suit provision by looking to the statutory venue provision. *Id.* at 307, 110 S.Ct. 1868. That venue provision "expressly indicated that the States' consent to suit extends to suit in federal court," because the provision provided that " '[t]he foregoing consent [of N.J.STAT.ANN. § 32:1–157 (West 1963); N.Y.UNCONSOL.LAWS § 7101 (McKinney 1979) ] is granted on the condition that venue ... shall be laid within a county or judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District.' " *Feeney,* 495 U.S. at 307, 110 S.Ct. 1868 (quoting N.J.STAT.ANN. § 32:1–162 (West 1963); N.Y.UNCONSOL.LAWS § 7106 (McKinney 1979)). The Court found that this provision "eliminates the danger ... that federal courts may mistake a provision intended to allow suit in a State's own courts for a waiver of Eleventh Amendment Immunity." *Id.* The court rejected an argument that a venue provision could shape the Court's construction of a consent to suit provision, because the venue provision "directly indicates the extent of the States' waiver embodied in the consent provision." *Id.* Furthermore,

> The States passed the venue and consent to suit provisions as portions of the same Acts that set forth the nature, timing, and extent of the States' consent to suit. The venue provision expressly refers to and qualifies the more general consent to suit provision. Additionally, issues of venue are closely related to those concerning sovereign immunity, as this Court has indicated by emphasizing

that "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School and Hospital v. Halderman,* 465 U.S., at 99, 104 S.Ct. 900.

*Feeney,* 495 U.S. at 307–08, 110 S.Ct. 1868.

### d. Waiver in this case.

The issue of waiver in this case turns on the waiver contained in the Iowa State Tort Claims Act. *See* Iowa Code § 669.4. Iowa Code § 669.4 provides that:

> The district court of the state of Iowa for the district in which the plaintiff is resident or in which the act or omission complained of occurred, or where the act or omission occurred outside of Iowa and the plaintiff is a nonresident, the Polk county district court has exclusive jurisdiction to hear, determine, and render judgment on any suit or claim as defined in this chapter. However, the laws and rules of civil procedure of this state on change of place of trial apply to such suits.
>
> The state shall be liable in respect to such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the state shall not be liable for interest prior to judgment or for punitive damages. Costs shall be allowed in all courts to the successful claimant to the same extent as if the state were a private litigant.
>
> The immunity of the state from suit and liability is waived to the extent provided in this chapter.
>
> A suit is commenced under this chapter by serving the attorney general or the attorney general's duly authorized delegate in charge of the tort claims division by service of an original notice. The state shall have thirty days within which to enter its general or special appearance.
>
> If suit is commenced against an employee of the state pursuant to the provisions of this chapter, an original notice shall be served upon the employee in addition to the requirements of this section. The employee of the state shall have the same period to enter a general or special appearance as the state.

Iowa Code § 669.

█ The plain language of section 669.4 limits waiver of Iowa's sovereign immunity to lawsuits brought in Iowa state courts. It is important to note that the Supreme Court recognized in *Feeney* that a state can create a limited waiver of this immunity by consenting to be sued in its own state courts without waiving its Eleventh Amendment immunity from suit in federal courts. *Feeney,* 495 U.S. at 306, 110 S.Ct. 1868 ("A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts," quoting *Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981)); *Welch v. Texas Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 473–74, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (noting that state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in state court); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99 n. 9, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (noting that Court has consistently held that state's waiver of sovereign immunity in state courts is not waiver of Eleventh Amendment immunity in federal courts); *In re Secretary of Dep't of Crime Control and Public Safety,* 7 F.3d 1140, 1147 (4th Cir.1993) (quoting *Feeney,* 495 U.S. at 305–06, 110 S.Ct. 1868), *cert. denied sub nom. Barfield v. Secretary, North Carolina Dep't of Crime Control,* 511 U.S. 1109, 114 S.Ct. 2106, 128 L.Ed.2d 667 (1994); *Harrison v. Hickel,* 6 F.3d 1347, 1354 (9th Cir.1993) (quoting *Feeney,* 495 U.S. at 305–06, 110 S.Ct. 1868); *Kroll v. Board of Trustees of Univ. of Ill.,* 934 F.2d 904, 910 (7th Cir.) (same), *cert. denied,* 502 U.S. 941, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991); *Riggle v. California,* 577 F.2d 579, 585 (9th Cir.1978) ("A state may waive immunity from suit in its own courts without thereby waiving its Eleventh Amend-

ment immunity from suit in federal courts."); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 2036, 138 L.Ed.2d 438 (1997) ("States have real and vital interests in preferring their own forum [over a federal forum] in suits brought against them, interests that ought not to be disregarded based upon a waiver [of immunity in the state forum]"). Thus, a state may waive its common law sovereign immunity under state law, without waiving its Eleventh Amendment immunity under federal law. This is precisely the situation with the Iowa State Tort Claims Act.

■ As was noted above, a state's waiver of its Eleventh Amendment immunity will be found "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Feeney*, 495 U.S. at 305, 110 S.Ct. 1868. The Iowa State Tort Claims Act provides that Iowa state district courts have exclusive jurisdiction to determine any suit or tort claim under that act. Absent reference to either Eleventh Amendment immunity or suit in *federal* court, the court cannot find that § 669.4 provides an express waiver of Eleventh Amendment immunity to suits against the state in federal court. *See Angela R.*, 999 F.2d at 325 (the state statute " 'must specify the State's intention to subject itself to suit in federal court,'" quoting *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. 3142, and also citing *Feeney*, 495 U.S. at 306–08, 110 S.Ct. 1868, and *Burk v. Beene*, 948 F.2d 489, 493–94). As a result, the court cannot conclude that the State of Iowa has waived its Eleventh Amendment immunity in the Iowa State Tort Claims Act since that act does not expressly specify the state's intent to subject itself to suit in federal court. Therefore, this portion of defendants' motion to dismiss is granted and defendants Iowa Public Defender's Office, and Iowa Department of Human Services are dismissed from Counts I, III, IV, V, and "Count V." Defendants Wegman, Jones, Driebilbus, Rasmussen, DeVoss, Limits, and Davenport are dismissed from

Counts II, III, IV,V, and VI based on Iowa State Tort Claims Act section 669.4, which limits waiver of Iowa's sovereign immunity to lawsuits brought in Iowa state courts. In addition, Wegman, Jones, Driebilbus, Rasmussen, DeVoss, Limits, and Davenport, in their official capacities only, are dismissed from Count I based on the Eleventh Amendment immunity.

### 2. *Substantive Due Process Claim*

#### a. *DeShaney decision and its progeny*

The court next takes up plaintiff Sophapmysay's substantive due process claim that defendants Wegman, Jones, Driebilbus, Rasmussen, DeVoss, Limits, and Davenport, in their individual capacity, violated Ammy's Fourteenth Amendment right to be free from state-created dangers to her bodily integrity.

■ In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 191, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), a child and his mother brought a § 1983 action against state caseworkers, alleging that the caseworkers had violated the child's right to substantive due process by failing to protect him from his father's physical abuse. When the child was treated at a hospital for bruises and abrasions, the defendant recommended that the boy be placed in the hospital's temporary custody. *See id.* at 192, 109 S.Ct. 998. Three days later, a team of social workers determined that there was insufficient evidence of child abuse and that the child should be returned to his father's custody. *See id.* Later, caseworkers who were monitoring the child's home, observed numerous suspicious injuries, and were twice informed of such injuries by medical personnel. The caseworkers, however, took no action to protect the child from his father. *See id.* at 192–93, 109 S.Ct. 998. The child subsequently was severely beaten and suffered severe brain damage. *See id.* at 193, 109 S.Ct. 998. The United States Supreme Court explained that the Due Process Clause of the Fourteenth Amendment

does not guarantee certain minimal levels of safety and security. *Id.* at 195, 109 S.Ct. 998. Thus, as a general rule, the failure of the state to protect a person against private violence does not amount to a violation of the Due Process Clause. *Id.* While recognizing that the general rule forecloses governmental liability for the failure to protect persons from injury at the hands of private actors, the Supreme Court noted in *DeShaney* that, in certain limited circumstances, the Constitution imposes upon state actors affirmative duties of care and protection with respect to particular individuals. *DeShaney,* 489 U.S. at 198, 109 S.Ct. 998. The Court observed, however, that because the state actors "played no part in [the] creation" of the dangers facing the plaintiff, the state owed no duty to the plaintiff:

> Petitioners concede that the harms Joshua suffered occurred not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor. While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id.* at 201, 109 S.Ct. 998.

#### b. The state-created danger exception

 Following *DeShaney,* several federal circuit courts of appeal, including the Eighth Circuit Court of Appeals, have recognized two exceptions to *DeShaney's* rule that state actors have no constitutional duty to protect people from each other: the "special relationship" exception and the "state-created danger" exception. *See*

*Norfleet ex rel. Norfleet v. Arkansas Dep't of Human Servs.,* 989 F.2d 289, 293 (8th Cir.1993); *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992) (*en banc* ). The later exception, upon which Sophapmysay relies, applies where the state affirmatively puts a person in a position of danger that the person would not otherwise have been in but for the state's intervention. *See S.S. ex rel. Jervis v. McMullen,* 225 F.3d 960, 962 (8th Cir.2000) (*en banc* ) (noting that constitutional tort may be committed where "state acts affirmatively to place someone in a position of danger that he or she would not otherwise have faced."); *Greer v. Shoop,* 141 F.3d 824, 827–28 (8th Cir.1998) (recognizing the existence of the state-created danger theory of constitutional liability); *Davis v. Fulton County, Ark.,* 90 F.3d 1346, 1351 (8th Cir.1996) ("A duty to protect has also been recognized in the circuit courts when the state affirmatively places a particular individual in a position of danger that she would not otherwise have faced."); *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992) ("We have held the Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced."), *cert. denied,* 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993); *Freeman v. Ferguson,* 911 F.2d 52, 55 (8th Cir.1990) ("It is not clear, under *DeShaney,* how large a role the state must play in the creation of danger and in the creation of vulnerability before it assumes a corresponding constitutional duty to protect. It is clear, though, that at some point such actions do create such a duty."); *see also Kneipp v. Tedder,* 95 F.3d 1199 (3d Cir.1996); *Uhlrig v. Harder,* 64 F.3d 567, 572 n. 7 (10th Cir.1995), *cert. denied,* 516 U.S. 1118, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996); *Dwares v. City of New York,* 985 F.2d 94, 99 (2d Cir.1993); *Reed v.*

*Gardner*, 986 F.2d 1122, 1125 (7th Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993). In addition to requiring that the state actor's conduct must have increased the danger of significant harm to a particular individual, in order for those actions to give rise to a violation of substantive due process rights a complaint must allege facts which "shock [ ] the conscience." *Terry B. v. Gilkey*, 229 F.3d 680, 684 (8th Cir.2000); *McMullen*, 225 F.3d at 964. Mere allegations of negligence are insufficient. *Terry B.*, 229 F.3d at 684; *McMullen*, 225 F.3d at 964.

### c. Analysis

In this case, Sophapmysay argues that defendants solicitation of Ammy to be a witness against Keosay and assurance of her protection conferred upon defendants a constitutional duty to protect Ammy. The court concludes that Sophapmysay's complaint expressly alleges facts sufficient to state a claim for violation of substantive due process. Sophapmysay alleges that Defendants actions in soliciting Ammy as a witness against Keosay created or exacerbated the danger which Keosay posed. Sophapmysay further alleges that the danger to Ammy was foreseeable since Ammy told defendants that Keosay had threatened to kill her if she revealed his sexual abuse of her. In light of this threat from Keosay, defendants promised Ammy protection. Sophapmysay asserts that defendants' actions of soliciting Ammy to be a witness against Keosay through assuring her protection from Keosay placed her in a dangerous position which disregarded Ammy's safety. At this juncture, the court finds that, upon review of the complaint, the allegations contained therein are sufficient to survive defendants' motion to dismiss. Accordingly, this portion of defendants' motion is denied and Sophapmysay's § 1983 claim under the Fourteenth Amendment will be allowed to proceed.

### 3. Public defenders actions under color of state law

Defendants also seek dismissal of the § 1983 claims against defendants Wegman, Jones, and Driebilbus, based on the Supreme Court's decision in *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), arguing that these public defenders were not acting under color of state law. In *Dodson*, the Court concluded that a person acts under color of state law for the purposes of Section 1983 liability "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 317–18, 102 S.Ct. 445 (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). Reasoning that the public defender's assignment to represent a criminal defendant of "entailed functions and obligations in no way dependent on state authority," such as the duty to "advance ... the undivided interests of his client," the court decided "only that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 318–319, 325, 61 S.Ct. 1031. *Dodson* is not dispositive here. None of the named public defenders here were performing "a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." The complaint specifically alleges that defendant Driebilbus was acting as a court appointed guardian ad litem for Ammy. Compl. at ¶ 26. It is alleged that Wegman and Jones were acting as Driebilbus' supervisors.[6] Compl. at ¶¶ 12, 68, 85. The record before the court does not permit it to determine, as a matter of law, that defendant public defenders here did not act under color of state law when performing the responsibilities of their positions. Such a determination is better left to a motion for summary judgment, at which time the court may consider material out-

6. Sophapmysay fails to allege any personal participation on the part of defendant Jones or Wegman. Sophapmysay, however, does appear to allege that both defendants failed to properly train, supervise or in some manner control the actions of Driebilbus.

**1196**

side the pleadings. Therefore, this portion of defendants' motion to dismiss is denied.

### III. CONCLUSION

Initially, the court concludes that the State of Iowa and its employees have Eleventh Amendment immunity. Thus, defendants Iowa Public Defender's Office, and Iowa Department of Human Services are dismissed from Counts I, III, IV, V, and "Count V." Defendants Wegman, Jones, Driebilbus, Rasmussen, DeVoss, Limits, and Davenport are dismissed from Counts II, III, IV,V, and VI. In addition, Wegman, Jones, Driebilbus, Rasmussen, DeVoss, Limits, and Davenport, in their official capacities only, are dismissed from Count I. The court further concludes that Sophapmysay has made out sufficient allegations to set forth a substantive due process claim that defendants Wegman, Jones, Driebilbus, Rasmussen, DeVoss, Limits, and Davenport violated Ammy's Fourteenth Amendment right to be free from state-created dangers to her bodily integrity. The court also concludes that the record before it does not permit it to determine, as a matter of law, that defendant public defenders here did not act under color of state law when performing the responsibilities of their positions. Accordingly, defendants' motion is denied as to Sophapmysay's § 1983 claim against these defendants in their individual capacities.

**IT IS SO ORDERED.**