# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3193

_____

| | | |
|---|---|---|
| Lori Teska, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Jessie Rasmussen, Individually and as | * | Northern District of Iowa. |
| Director of the Department of Human | * | |
| Services; Mary Kay Renken, | * | [UNPUBLISHED] |
| Individually and as Representative of | * | |
| the Iowa Department of Human | * | |
| Services; Iowa Department of Human | * | |
| Services, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: May 13, 2002
Filed: July 11, 2002

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

PER CURIAM.

Lori Teska sued Jessie Rasmussen and Mary Kay Renken, in their individual and official capacities, claiming that they violated her civil rights by recommending the termination of her parental rights without making accommodations for her mental limitations. Teska also sued Rasmussen and Renken under various other theories

including negligence, negligent infliction of emotional distress, and recklessness. In addition, Teska sued the Iowa Department of Human Services (IDHS) under the same theories and under respondeat superior.[1] After the district court[2] granted summary judgment to IDHS, Rasmussen and Renken, Teska appealed. After careful review of the record, we affirm.

IDHS removed Teska's infant child, C.T., from the family home in January 1998. IDHS suspected abuse after doctors diagnosed C.T. with a broken right arm. Renken, a social worker, was assigned to Teska's case. Rasmussen is the Director of IDHS.[3] While IDHS investigated the incident, Teska voluntarily completed services offered by IDHS, including a psychosocial evaluation, a psychological evaluation, individual therapy, parent skill development, and supervised visitation. During this time, Renken was aware that Teska had mental limitations and attempted to structure services for her based on Teska's limitations.

The state petitioned for the termination of Teska's parental rights, based not on the allegations of abuse, but on Teska's failure to control her anger, her dependent emotional needs, and her inability to meet C.T.'s daily needs. The Iowa state juvenile court concluded that the allegations of physical abuse could not be sustained: "Based on the evidence presented, there is no clear and convincing evidence as to how the injury happened." J.A. at 94. The juvenile court terminated Teska's parental rights and the Iowa Court of Appeals affirmed that decision.

---

[1]Teska's complaint does not distinguish the claims between Rassmussen, Renken and IDHS. The complaint collectively refers to "defendants."

[2]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

[3]Rasmussen became director after C.T. was removed from Teska's home. At the time officials removed C.T., Teska was living with her husband, they have since divorced.

In August 2000, Teska sued IDHS, Rasmussen and Renken in federal court alleging that they violated her civil rights by failing to accommodate her mental disability. IDHS, Rasmussen, and Renken moved for summary judgment, which the district court granted. Teska timely appealed.

We review *de novo* a district court's decision to grant summary judgment. See Ihnen v. United States, 272 F.3d 577, 579 (8th Cir. 2001). Summary judgment is appropriate where the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000); see Fed. R. Civ. P. 56(c).

The district court granted summary judgment concluding that IDHS, and Rasmussen and Teska, in their official capacities, had Eleventh Amendment immunity. The district court concluded that there were no genuine issues of material fact and Rasmussen and Renken deserved judgment as a matter of law. Teska raises several issues for appeal, but we limit our review to the dispositive issues, as the Eleventh Amendment is dispositive of most claims.

The district court did not err in holding that IDHS has Eleventh Amendment immunity from Teska's lawsuit. Iowa has waived Eleventh Amendment immunity for tort claims filed in state court, but has not consented to tort claims filed in federal court. See Iowa Code § 669.4; Sophapmysay v. City of Sergeant Bluff, 126 F. Supp.2d 1180, 1193 (N.D. Iowa 2000) (Iowa State Tort Claims Act does not constitute express waiver of Iowa's Eleventh Amendment immunity to suits in federal court). Rasmussen and Renken in their professional capacities also possess Eleventh Amendment immunity. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999) (Section 1983 suit could not be brought against state commissioners in their official capacities, because such suit was no different than a suit against the state itself).

Nor did the district court err in granting summary judgment to Rasmussen in her individual capacity. Teska failed to connect Rasmussen to the investigation or adjudication resulting in the termination of Teska's parental rights. See Thomason v. SCAN Volunteer Serv., Inc., 85 F.3d 1365, 1370 (8th Cir. 1996) (holding that parents, who filed a civil rights action following the removal of child by child welfare authorities, failed to connect program director's actions to alleged violation of parent's constitutional rights). The record does not contain any facts supporting the claims against Rasmussen. No evidence suggests that Rasmussen was personally or directly involved in the alleged violation of Teska's constitutional rights. Further, no facts support that, in her capacity as a supervisor, Rasmussen knew about the allegedly unlawful conduct and facilitated, approved, condoned, or deliberately ignored the conduct. See Id. Teska's supplemental affidavits acknowledge that Rasmussen, as IDHS director, had no personal role in Teska's case. Teska essentially asserts that Rasmussen should have provided better supervision and training of her employees. The district court correctly concluded that respondeat superior liability is an improper basis for a violation under Section 1983. See Simmons v. Cook, 154 F.3d 805, 808 (8th Cir. 1998).

Finally, the district court correctly granted summary judgment to Renken in her individual capacity because Teska failed to identify any specific or concrete facts supporting her claim that Renken caused a deprivation of her constitutional rights. See Thomason, 85 F.3d at 1370 (dismissing case where parents did not identify any specific or concrete evidence supporting their claim). Teska responded to the summary judgment motion by producing two affidavits. The affidavit of Teska's father stated "Mary Kay Renken was involved in the case for the Department but she did nothing. She just stood there and let things happen." J.A. at 150. Teska's affidavit mentions Renken once:

> I asked Mary Kay Renken to help me get on housing assistance so that
> I could work on getting my daughter back. Ms. Renken suggested that

Donald [Teska's husband] move out so that [C.T.] and I could remain in the home. I told that to Donald but when Donald asked Ms. Renken about it, she denied that she ever said it.

J.A. at 157. To survive summary judgment Teska must show that a genuine issue of material fact exists for trial. Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998); Thomas v. Runyon, 108 F.3d 957, 959 (8th Cir. 1997). Teska's allegations do not establish a constitutional violation or create an issue of material fact. The district court properly dismissed Teska's claims against Renken individually.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.