**FARM CREDIT SERVICES OF AMERICA, Plaintiff,**

v.

**AMERICAN STATE BANK, Defendant.**

**No. C01–4115–MWB.**

United States District Court, N.D. Iowa, Western Division.

May 21, 2002.

Thomas O. Ashby, Steven D. Davidson, Barid Holm McEachen Pederson, Omaha, NE, for plaintiff.

Edward M. Mansfield, Belin Lamson McCormick Zumbach, Des Moines, IA, Steven R. Jensen, Crary-Huff-Inster-Hecht-Sheehan-Ringenberg-Hartnett-Storm, Sioux city, IA, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

BENNETT, Chief Judge.

This case concerns the time requirements of the Federal Reserve Board Regulation CC, 12 C.F.R. Part 229 ("Regulation CC") which was devised to implement the Expedited Funds Availability Act, 12 U.S.C. §§ 4001–4010, "a 1987 law enacted to accelerate the availability of funds to bank depositors and to improve the Nation's check payment system." *Bank One Chicago, N.A. v. Midwest Bank & Trust Co.,* 516 U.S. 264, 266, 116 S.Ct. 637, 133 L.Ed.2d 635 (1996). The parties contend, and this court agrees, that the legal issues presented here are ones of first impression in the federal courts. The court is reminded of Justice Blackmun's aphorism in *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 766, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (Blackmun, J., concurring), that "this is one of those cases that occasionally appears ... where it is more important that it be decided ... than that it be decided correctly." While Justice Blackmun's observation was specifically limited to "procedural" issues—it rings true here where the issues are ones of first impression, the amount of money at stake to the parties is

very significant, and the parties and this court will no doubt benefit from the wisdom of the Eighth Circuit Court of Appeals on the issues presented. Therefore, I have decided this matter with speed but not haste, and with less time consuming analysis than usual to assist the parties in expediting the inevitable appeal.

## I. INTRODUCTION

On November 15, 2001, plaintiff Farm Credit Services of America ("Farm Credit") filed this action against defendant American State Bank ("ASB") which arises from a check kiting scheme carried out by Wayne Kooistra. Plaintiff Farm Credit asserts three claims against ASB which relate to over $6 million in payable through drafts returned by ASB which were drawn on Farm Credit and payable through Wells Fargo Bank Nebraska, N.A. ("Wells Fargo"). ASB returned the payable through drafts, alleging that there had been a late return of the drafts. Farm Credit's claims against ASB are based on the legal premise that ASB made a "wrongful claim of late return" with respect to the payable through drafts.

On December 17, 2001, ASB filed a motion to dismiss. In its motion to dismiss, ASB seeks dismissal of the case because the complaint fails to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, ASB contends that while all of Farm Credit's causes of action are based on the legal conclusion that ASB made a "wrongful claim of late return," there are no factual allegations which support that conclusion. Rather, ASB contends that the facts alleged in the complaint demonstrate that the assertion of late return was correct. Alternatively, ASB asserts that the complaint must be dismissed because Farm Credit as a non-bank drawee had thirty days in which to dishonor the drafts. Farm Credit then sought and was granted an extension of time in which to resist

ASB's Motion To Dismiss. On January 17, 2002, Farm Credit filed an amended complaint in which it reasserts the same three claims found in the original complaint but added new factual allegations. Farm Credit then filed its resistance to ASB's Motion To Dismiss. ASB subsequently filed a timely reply brief.

The court held oral arguments on defendant ASB's Motion To Dismiss on May 16, 2002. At the oral arguments, plaintiff Farm Credit was represented by Steven D. Davidson of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Nebraska. Defendant ASB was represented by Edward M. Mansfield of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, Iowa, and Steven R. Jensen of Crary, Huff, Inkster, Sheenan, Riggenberg, Hartnett, Storm & Jensen, Sioux City, Iowa. Both the briefing and the oral arguments were of the highest quality and of great assistance to the court.

The court turns first to a discussion of facts alleged in the complaint then to the standards applicable to motions to dismiss and, finally, to the legal analysis of whether Farm Credit has alleged a claim upon which relief may be granted in this litigation.

## II. FACTUAL BACKGROUND

The factual background for disposition of these motions is based entirely on the facts as alleged in Farm Credit's January 17, 2002, amended complaint.

Plaintiff Farm Credit Services of America is part of the Farm Credit System and an instrumentality of the United States with its principal office located in Omaha, Nebraska. Defendant American State Bank is a financial institution incorporated in Iowa with its principal place of business in Sioux Center, Iowa.

Prior to and during August 2001, Farm Credit extended credit to Wayne Kooistra, and entities owned and controlled by Kooistra, including various lines of credit for the purpose of financing his cattle business. To secure repayment of funds, Kooistra granted to Farm Credit a security interest in certain assets, including cattle and proceeds from cattle sales.

Kooistra borrowed funds from Farm Credit through the use of drafts drawn on Farm Credit, payable through Wells Fargo. Kooistra maintained a checking account in his name at ASB which was used as a clearing account in connection with funds advanced by Farm Credit. Typically, Kooistra deposited Farm Credit drafts, representing advances from his line of credit, into his checking account at ASB, and then issued checks from his ASB checking account to purchase cattle and other assets that were subject to Farm Credit's security interest. When Kooistra desired to sell cattle or other assets subject to Farm Credit's security interest, Kooistra would deposit the proceeds from the sale into his checking account at ASB and then issue a check from that account to repay his debt to Farm Credit.

ASB was aware that Kooistra utilized his ASB checking account as a clearing account for funds loaned to Kooistra by Farm Credit and to pay debts owed to Farm Credit through the proceeds of the sale of cattle or other assets subject to Farm Credit's security interest.

On August 22, 2001, through August 24, 2001, several drafts drawn on Farm Credit and payable through Wells Fargo were executed by Kooistra and deposited by him into his ASB checking account. Specifically, Kooistra executed seven drafts on August 22, 2001, totaling $1,781,116.00. He executed eight drafts on August 23, 2001, totaling $2,300,499.00. On August 24, 2001, Kooistra executed eight drafts total-

ing $2,208,879.00. The total of all these drafts was $6,290,494.00.

The next business day following the deposit, i.e. August 23, 24 and 27, 2001, the drafts were forwarded to and received by Wells Fargo. The next business day following Wells Fargo's receipt of the drafts, i.e. August 24, 27, and 28, 2001, the drafts were forwarded to and received by Farm Credit. Farm Credit did not accept the drafts, did not make final payment on the drafts, and returned the drafts to Wells Fargo on August 29, 2001. The returned drafts were forwarded to and received by ASB from Wells Fargo on August 30, 2001. ASB had notice of Farm Credit's return of the drafts not later than August 30, 2001. ASB returned the drafts to Wells Fargo, alleging that there had been a late return of the drafts.

### III. LEGAL ANALYSIS

#### A. Standards Governing 12(b)(6) Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides:

(b) Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

FED.R.CIV.P. 12(b)(6).

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law." *North Star International v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir.1983) (citing *Yuba Consolidated Gold Fields v. Kilkeary,* 206 F.2d 884, 889 (9th Cir.1953)). In considering a motion to dismiss for failure to state a

claim upon which relief can be granted pursuant to Rule 12(b)(6), the court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Botz v. Omni Air Int'l,* 286 F.3d 488, 489 (8th Cir.2002); *accord Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Meyer v. City of Joplin,* 281 F.3d 759, 760 (8th Cir.2002); *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir. 2001); *Whitmore v. Harrington,* 204 F.3d 784, 784 (8th Cir.2000); *Anderson v. Franklin County, Mo.,* 192 F.3d 1125, 1131 (8th Cir.1999); *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999); *Midwestern Mach. v. Northwest Airlines, Inc.,* 167 F.3d 439, 441 (8th Cir.1999); *Valiant–Bey v. Morris,* 829 F.2d 1441, 1443 (8th Cir. 1987). A complaint should be dismissed under Rule 12(b)(6) only if, taking the allegations as true, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Knapp v. Hanson,* 183 F.3d 786, 788 (8th Cir.1999) ("A motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.' ") (quoting *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986), and citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). This court also observes that a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) does not test whether the plaintiff will prevail on the merits, but rather tests whether the plaintiff has properly stated a claim upon which relief can be granted. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Furthermore, pertinent to this 12(b)(6) motion, the court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indemnity Corp.,* 280 F.3d 868, 870 (8th Cir.2002); *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir.1997) (noting that the court must "reject conclusory allegations of law and unwarranted inferences."); *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987), and 5 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan,* 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the facts alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver,* 105 F.3d at 397; *Westcott,* 901 F.2d at 1488.

## B. Analysis

Defendant ASB contends in its motion that the amended complaint in this matter must be dismissed because the allegations contained in the amended complaint demonstrate conclusively that ASB made a proper claim of late return because Wells Fargo's notice to ASB did not comply with the time requirements of the Federal Reserve Board Regulation CC. Thus, the legal question at issue here is whether Wells Fargo's return of the drafts comports with Regulation CC.

In order to understand Regulation CC, it is important for one to understand the historical background which led to the pas-

sage of the Expedited Funds Availability Act in 1987:

Historically, the Nation's check payment system has been controlled primarily by state law, particularly, in recent decades, by articles 3 and 4 of the Uniform Commercial Code (UCC). Although federal regulations have long supplemented state law in this area, see most notably Regulation J, 12 C.F.R. § pt. 210 (1995), the UCC has supplied the basic legal framework for bank deposits and check collections. But despite UCC controls, the check-clearing process too often lagged, taking days or even weeks to complete. To protect themselves against the risk that a deposited check would be returned unpaid, banks typically placed lengthy "holds" on deposited funds. Bank customers, encountering long holds, complained that delayed access to deposited funds impeded the expeditious use of their checking accounts. See S.Rep. No. 100-19, 100th Cong. 1st Sess. 25–26 (1987) U.S.Code Cong. & Admin. News 1987 at pp. 489, 515–516.

In 1987, Congress responded by passing the Expedited Funds Availability Act (EFA Act or Act), 101 Stat. 635, as amended, 12 U.S.C. § 4001–4010. The Act requires banks to make deposited funds available for withdrawal within specified time periods, subject to stated exceptions. *See* §§ 4002, 4003. To reduce banks' risk of nonpayment, the Act grants the Board of Governors of the Federal Reserve System (Federal Reserve Board or Board) broad authority to prescribe regulations expediting the collection and return of checks. § 4008. *Bank One Chicago, N.A.*, 516 U.S. at 266, 116 S.Ct. 637 (footnote omitted).

Subpart C of Regulation CC contains rules to expedite the collection and return of checks. *Id.* at 268, 116 S.Ct. 637. Regulation CC requires banks, among other things, to provide prompt notice of non-payment of certain checks. 12 C.F.R. § 229.33(a). Section 229.33(a) states:

a) *Requirement.* If a paying bank determines not to pay a check in the amount of $2,500 or more, it shall provide notice of nonpayment such that the notice is received by the depositary bank by 4:00 p.m. (local time) on the second business day following the banking day on which the check was presented to the paying bank. If the day the paying bank is required to provide notice is not a banking day for the depositary bank, receipt of notice on the depositary bank's next banking day constitutes timely notice. Notice may be provided by any reasonable means, including the returned check, a writing (including a copy of the check), telephone, Fedwire, telex, or other form of telegraph.

12 C.F.R. § 229.33(a).

Wells Fargo, as the bank through which the drafts at issue in this litigation were payable, is deemed to be a "paying bank" under the nomenclature of Regulation CC.[1]

---

1. Regulation CC contains the following definition of what constitutes a "paying bank":

*(z) Paying bank means —*

(1) The bank by which a check is payable, unless the check is payable at another bank and is sent to the other bank for payment or collection;

(2) The bank at which a check is payable and to which it is sent for payment or collection;

(3) The Federal Reserve Bank or Federal Home Loan Bank by which a check is payable;

(4) The bank through which a check is payable and to which it is sent for payment or collection, if the check is not payable by a bank; or

(5) The state or unit of general local government on which a check is drawn and to which it is sent for payment or collection.

For purposes of Subpart C, and in connection therewith, Subpart A, paying bank in-

12 C.F.R. § 229.2(z)(4). The official commentary to Regulation CC explains the Federal Reserve Board's rationale for treating a payable though bank, such as Wells Fargo here, as a paying bank:

Under §§ 229.30 and 229.36(a), a bank designed as a payable-through bank or payable-at bank and to which the check is sent for payment or collection is responsible for the expedited return of checks and notice of nonpayment requirements of Subpart C. The payable-through or payable-at bank may contract with the payor with respect to its liability in discharging these responsibilities. The Board believes that the Act makes a clear connection between availability and the time it takes for checks to be cleared and returned. Allowing the payable-through bank additional time to forward checks to payor and await return or pay instructions from the payor would delay the return of these checks, increasing the risks to depository banks. Subpart C places on the payable-through and payable-at banks the requirement of expeditious return based on the time the payable-through or payable-at bank received the check for forward collection.

12 C.F.R. pt. 229, App. E, II(Z)(2).

Thus, under Regulation CC, Wells Fargo had only until 4:00 p.m. of the second following business day after receipt of an item to provide notice of dishonor. 12 C.F.R. § 229.33(a). Here, according to the allegations contained in the amended complaint, Wells Fargo did not comply with the requirements of Regulation CC because none of the items were returned by Wells Fargo to ASB by the 4:00 p.m. deadline imposed in § 229.33(a). The drafts at issue reached Wells Fargo on August 23, 24, and 27, but the returns to ASB did not reach it until August 30, some five, four, or three business days respectively after Wells Fargo received them. Thus, because ASB's notification did not meet the requirements of Regulation CC, the notice provided by Wells Fargo was indisputably late. As a result, the court finds that plaintiff Farm Credit has no basis for a claim against ASB that it made a "wrongful claim of late return" with respect to the drafts at issue in this litigation.

■ Farm Credit raises several arguments for why the motion to dismiss should not be granted in this case. Most significantly, Farm credit asserts that Regulation CC is optional and that it had the prerogative of complying with the midnight deadline found in the U.C.C. § 4–302 [2] The court finds no support for this argument within Regulation CC. Rather, the state law requirements under the UCC

---

cludes the bank through which a check is payable and to which the check is sent for payment or collection, regardless of whether the check is payable by another bank, and the bank whose routing number appears on a check in fractional or magnetic form and to which the check is sent for payment or collection.

12 C.F.R. § 229.2(z).

**2.** This statute provides in pertinent part:

1. If an item is presented to and received by a payor bank, the bank is accountable for the amount of:

a. a demand item, other than a documentary draft, whether properly payable or not, if the bank, in any case in which it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline

. . .

IOWA CODE § 554.4302(1)(a). A bank's midnight deadline "is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." IOWA CODE § 554.4104(1)(j).

are additional requirements to those imposed by Regulation CC. As one leading treatise on the subject cogently explains:

> The Fed could have done away with the UCC midnight deadline altogether, viewing the duty of expeditious return as a complete replacement for the more mechanical test of Article 4. However, a decision was made to retain the midnight deadline as an additional incentive for quick return of dishonored checks. Therefore, instead of displacement, we have another example of overlay. Now a payor bank has two duties: (1) return the check expeditiously under Regulation CC so that it is calculated to reach the depository bank quickly and (2) to dispatch the check before the midnight deadline under Article 4. Moreover, although a payable through bank has the same expeditious return duties as a paying bank, Regulation CC retains the UCC rule by which a payable through bank is not treated as a payor bank for midnight deadline purposes. The upshot is that the substantial body of case law construing the UCC will remain in place, often being litigated totally independently of any breach of duty under the federal regulation.

1 BARLEY CLARK & BARBARA CLARK, THE LAW OF BANK DEPOSITS, COLLECTIONS AND CREDIT CARDS ¶ 8.14(2)(b) at 8–52 (Rev.Ed.2000) (footnotes omitted). The Clark treatise provides the following illustration:

What are the late return deadlines? Under Reg. CC (12 C.F.R. § 229.36(a)), a draft payable through a bank is considered to be drawn on that bank for purposes of expeditious return and notice of nonpayment of large-dollar items ($2,500 or more). So, if a payable through draft in the amount of $4,500 is presented through the Fed to the payable through bank on Monday, the bank must send notice of nonpayment so that it can be received by the bank of first deposit by 4:00 P.M. on the second business day following the banking day on which it was presented through the Fed. *Id.* § 6.02(2)(1) at 6–82.

■ The court concludes that Wells Fargo did not comply with the requirements of Regulation CC because it did not return the drafts to ASB by the 4:00 p.m. deadline imposed in § 229.33(a). Thus, because the notice provided by Wells Fargo was indisputably late, the court finds that plaintiff Farm Credit has no basis for a claim against ASB that it made a "wrongful claim of late return."[3] Therefore, ASB's Motion to dismiss is granted.

### III. CONCLUSION

The court concludes that the bank through which the drafts at issue in this litigation were payable, failed to comply with the notice requirements of Regulation CC. As a result, the notification provided ASB was late. Thus, the court finds that

---

**3.** Farm Credit alternatively argues that if it is considered a non-bank drawee of the drafts it has stated a viable cause of action against ASB for its rejection of the drafts because under the U.C.C. a non-bank drawee has a full thirty days in which to give notice of a draft's dishonor to the presenting entity. *See* IOWA CODE § 554.3503(3). This theory fails because the U.C.C. only permits payor banks, not non-bank drawees, to make provisional settlements. *See* IOWA CODE § 554.4215. As the Clark treatise points out:

If the nonbank drawee authorizes the payable through bank to pay the draft, the company is of course liable on the instrument, and payment cannot be cancelled in the absence of a breach of warranty based on forged indorsement or material alteration.
1 BARLEY CLARK & BARBARA CLARK, THE LAW OF BANK DEPOSITS, COLLECTIONS AND CREDIT CARDS ¶ 6.02(2)(k)(iii) at 6–80. Because Farm Credit does not allege that the drafts were not initially paid by it, only the legal conclusion that they were not "finally paid," Farm Credit's non-bank drawee theory is unpersuasive.

plaintiff Farm Credit has no basis for a claim against ASB that it made a "wrongful claim of late return." Therefore, ASB's Motion to dismiss is **granted** and judgment shall be entered accordingly.

**IT IS SO ORDERED.**